No. 23,776.

JESSIE CLEMENTS, *Appellee*, v. WALTER L. MANSON and WILLIAM THOMAS MANSON, *Appellants*.

### SYLLABUS BY THE COURT.

1. ORAL CONTRACT—*To Withhold Suit to Set Aside Will.* The findings and verdict returned by the jury were supported by sufficient evidence.

2. SAME—*Compromise and Settlement—Forbearance to Bring Suit to Set Aside Will.* The plaintiff claimed that her brothers, the defendants, agreed to pay her a certain sum for her withholding a suit to set aside the will and certain conveyances of their father. The record indicates that the plaintiff had been advised and believed that she had a good cause of action, and it is held that under such circumstances an oral agreement to pay a certain sum for forbearance was valid; and such alleged agreement was sufficiently supported by the evidence.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed June 10, 1922. Affirmed.

*Carr W. Taylor, J. H. Connaughton,* both of Hutchinson, and *H. E. Walter,* of Kingman, for the appellants.

*C. C. Calkin,* and *S. S. Alexander,* both of Kingman, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued her two brothers, Walter L. Manson and William Thomas Manson, for $5,000, alleging that they had agreed to pay her that sum in consideration of her forbearance to bring a suit to set aside their father's will and certain conveyances.

The petition alleged that prior to his death in February, 1916, the father, Walter Manson, sr., had made conveyances of a large part of his property, and that immediately after his death the defendants produced what they asserted was his last will and testament with codicil, containing a bequest to the plaintiff of $500 and no more; that she, the plaintiff, took the position that the will and codicil were void because procured by the brothers through fraud, duress and undue influence and that the conveyances preceding the will were void for the same reasons; that she claimed her rights as a daughter and heir at law as though her father had died intestate without making such conveyances and that she advised the defendants that she would begin litigation to recover her interest as a legal heir; that the controversy thus arising and existing was in good faith on her part; that a compromise and settlement between her and her brothers was orally agreed upon.

"That for and in consideration of this plaintiff giving up, foregoing, waiv-
ing and abandoning her said claims and her said threatened litigation and in
addition thereto that this plaintiff should not contest the said will and codicil,
but would receive and accept the bequest therein in her favor in the said
sum of $500.00 the said defendants would in addition thereto pay to this plain-
tiff within the time and on the conditions hereinafter set forth the sum of
Five Thousand Dollars ($5,000.00). That as a further part of said settlement
and agreement it was agreed that said sum of $5,000.00 should be paid by said
defendants to this plaintiff immediately upon the expiration of one year from
the date of the death of the said Walter Manson, and on the further condi-
tion that this plaintiff had not, within said year, brought any action to con-
test the will and codicil of the said Walter Manson, deceased, or to cancel and
set aside the conveyances . . ."

The answer denied generally all the allegations and denied that
William Thomas Manson had any authority to act for his brother,
Walter L. Manson, in making any contract with the plaintiff, and
alleged that there was a total failure of consideration to support the
pretended oral contract alleged, and that the pretended cause of ac-
tion set out by plaintiff was barred by the five-, three-, two- and
one-year statutes of limitation.

The plaintiff testified to a conversation had with Thomas Manson
in the presence of his wife:

"I told him that I wanted to get the $5,000 apiece and the $1,000 that was
given us in the will and if he would do that we would not bring suit against
them and would not tie up the property and that they said they thought
that was a little too much. Finally I said I will take $4,000 for myself but I
would not take less than $5,000 for my sister. He, Tom, said I will give you
$4,000 if you don't sue and they wanted me to write my sister and find out
about her part, if she would not take $4,000 instead of $5,000. I wrote to her
and she sent me a telegram, which came on February 25th."

She testified that at the time of the funeral she had a talk with
her brother Walter and after telling him what she thought about the
condition of affairs he said:

"It did not look just right and he said for me to talk it over with brother
Thomas and we could talk it over and then he would see brother Thomas and
talk it over with him and then he said whatever brother Tom said would be
all right with him."

Further, a few days after her father's death the plaintiff went to
see two of the attorneys for the defendants and was advised to bring
suit; that she had a good case. She then went to her brother
Thomas's house and after she had told him her side of the case he
said that it was wrong for him to do the way he had done and he
was sorry for the part he had in it. He said he had seen Walter and

had been to Kingman to see an attorney and they had agreed to pay the money to her and her sister one year after the date of her father's death. Thomas said he had received a letter from Walter but would not let the plaintiff see it, but that Walter would come through with his part of the agreement. In 1917, Walter had a talk with the plaintiff and said that whatever Thomas had agreed to do would be all right with him and agreed to carry out the details as Thomas had made them.

The plaintiff recovered, and the defendants appeal, assigning as error certain rulings touching instructions, and the denial of a new trial.

The defendants requested the court to instruct that any agreement on the part of the defendants to pay or do anything in consideration of forbearance on the part of the plaintiff to bring suit would be without consideration and void. This was refused. The court charged that if the plaintiff had expressed dissatisfaction with the will and in good faith threatened to contest it, and that thereafter in order to compromise and settle the difference between the members of the family the plaintiff agreed not to contest the will and not to involve the estate in litigation, and in pursuance thereof the defendants or either of them agreed to pay a certain sum of money to the plaintiff, the jury would be warranted in finding that there was a sufficient consideration to support such oral agreement, if one were made. The jury were told in substance that in order for the plaintiff to recover she must have believed in good faith that she had a valid cause of action.

It is contended that the negotiations did not constitute an oral contract; that the agreement claimed to have been made was for forbearance to bring a groundless suit; and it is also argued that before the plaintiff could recover she must show that her father was incapacitated or under duress when he made the conveyances and the will.

The jury in answer to special questions found that the agreement was made and that its terms were that in consideration of the plaintiff's foregoing litigation the defendants would pay her $4,000 upon the expiration of the year after the death of the testator. From an examination of the record we find that the evidence was sufficient to justify these findings and the verdict reached by the jury.

There is nothing to indicate that the plaintiff was acting in bad

faith in her threat to bring suit, but on the contrary she had been advised by good lawyers that she had a good case, and she evidently felt that she had been unfairly treated in the distribution of her father's estate. While the alleged oral contract was denied, the testimony already quoted was sufficient if believed, as it manifestly was, to substantiate the claim of the plaintiff.

Finding no material error in the record, the judgment is affirmed.