No. 42,043

Eugene A. Sutherland, *Appellee*, v. Clara B. Sutherland, Individually and as Administratrix of the Estate of William F. Sutherland, Deceased, *Appellant*.

(358 P. 2d 776)

Opinion filed January 21, 1961.

Robert M. Baker, of Ashland, argued the cause and was on the brief for the appellant.

Milton Zacharias, of Wichita, argued the cause, and Kenneth H. Hiebsch, Richard A. Render, Albert L. Kamas, Donald E. Lambdin and David G. Arst, all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action brought to enforce the specific performance of a contract to convey real estate. The defense is predicated upon fraud and coercion exercised in procuring the execution of the contract and upon a charge of grossly inadequate consideration, and the defendant seeks recision of the contract and an order quieting her title. The trial court, after hearing the action upon issues joined by the pleadings, ordered specific performance of the contract. Appeal has been duly perfected to this court by the defendant.

Among the questions presented the most important is whether the findings of the trial court are supported by the evidence.

The contract in question was made and entered into on the 10th day of January, 1959, by and between Clara B. Sutherland, individually and as administratrix of the estate of William F. Sutherland, deceased, (defendant-appellant) and Eugene A. Sutherland (plaintiff-appellee). Eugene was the nephew of Clara's deceased husband, William F. Sutherland.

The contract recited that a dispute had arisen between the parties concerning the ownership of approximately 1,600 acres of land which was specifically described in the contract, and that the parties desired to enter into an agreement of compromise and settlement whereby all matters of dispute between them would be settled and litigation avoided.

In consideration of the sum of $20,000 to be paid by Eugene A. Sutherland and the forbearance of any legal action to establish his claim to such land, Clara B. Sutherland agreed to convey to Eugene A. Sutherland by warranty deed all her right, title and interest in and to the described real property, $5,000 to be paid by Eugene A. Sutherland on the execution of the contract, and $15,000 in accordance with the terms and conditions thereafter set forth. The contract recited that the original copy of the contract and a deed executed by Clara B. Sutherland "shall be placed in

escrow with the First National Bank of Meade, Kansas," said bank being appointed as escrow agent by the parties. The contract was specific and detailed in many particulars relative to the transfer of title and possession of the real estate. It also took into consideration various contingencies that might arise, prior to the final conveyance of the property by delivery of the deed from the escrow agent to Eugene A. Sutherland, and made provision for such contingencies.

The specific findings of the trial court material herein are:

"8. That said contract was dictated by defendant's attorney, David J. Wilson, to his secretary in the presence of defendant, Clara B. Sutherland, and in the presence of defendant's daughter, Zaidee Hill, her son-in-law, Delbert Hill, the plaintiff, Eugene A. Sutherland, and plaintiff's attorney, Albert L. Kamas; and the contract was discussed paragraph by paragraph in the presence of all of said persons.

"9. That plaintiff's consideration for the contract was $20,000.00 and the forbearance of any legal action to establish plaintiff's claim to the said real estate, . . .

"10. That the claim for which plaintiff forbore legal action, as a part of the consideration, was bona fide and in good faith.

"11. That at the time the contract was entered into the defendant, Clara B. Sutherland, was personally represented by well qualified and competent counsel, David J. Wilson, . . .

"12. That defendant, Clara B. Sutherland, was capable of and did understand the nature and effect of the contract, and of her own free will assented to it at the time that she signed said contract; that her assent was uninfluenced by fraud, coercion or undue influence.

"13. That the plaintiff, Eugene A. Sutherland, tendered $5,000.00 in compliance with the contract, the check for which was accepted by defendant at the time of the signing of the contract on January 10, 1959, and held by defendant until it was returned to plaintiff by letter dated February 5, 1959, which letter is attached to plaintiff's petition.

"14. That plaintiff, Eugene A. Sutherland, at all times remained ready, willing and able to perform his part of the contract and offers to so perform.

"15. That the contract was definite and certain in its terms, contained adequate consideration, was fair to both parties, and capable of being performed by both parties."

The trial court concluded the parties to the contract were bound by the terms and conditions of the contract and that Eugene A. Sutherland was entitled to an order of specific performance:

"(1) directing the defendant to deliver duly executed warranty deed conveying the described real estate to plaintiff to the First National Bank in Meade, Kansas, as Escrow Agent, in accordance with the terms of the written contract;

"(2) directing the defendant to give the plaintiff immediate possession of said real property, subject only to the agricultural lease referred to in the written contract;

"(3) and generally directing the defendant to comply with all of the terms of the contract here involved."

As a preliminary we shall dispose of the appellant's contention that she was erroneously denied a jury trial.

Whether a party is entitled to a jury trial as a matter of right is to be determined from the pleadings. In determining this question the court should disregard the form of the pleadings and look to the essential nature of the controversy between the parties as disclosed by the pleadings. It is the substance and not the form of the pleading that is material. (*Holuba v. Floersch,* 142 Kan. 601, 50 P. 2d 1004, including cases cited therein; and *City of Osawatomie v. Slayman,* 182 Kan. 770, 323 P. 2d 910.) Here it is clear from the pleadings that the real controversy between the parties is whether a contract for the conveyance of real estate shall be specifically enforced. The defense set up in the answer alleged fraud, coercion and inadequacy of consideration, along with a prayer for cancellation and recision of the contract to convey real estate.

It is elementary that a jury trial is not a matter of right in specific performance cases. Both the form and the substance of the action are purely equitable and a jury trial was properly denied. (*Akins v. Holmes,* 89 Kan. 812, 133 Pac. 849.) It is well established that a trial by jury is not a matter of right to parties in cases that have traditionally been equitable in nature. (*Holuba v. Floersch,* supra; *Hockett v. Earl,* 89 Kan. 733, 133 Pac. 852; *Fisher v. Rakestraw et al.,* 117 Kan. 441, 232 Pac. 605; and *Farmers State Bank v. Lanning,* 162 Kan. 95, 174 P. 2d 69.)

The appellant isolates the issues of fraud, coercion, failure of consideration, and undue influence and cites cases in which it was said on such issues the parties were entitled to a jury trial. An examination of the cases cited in this connection discloses that those actions presenting such issues were *not equitable in nature.* Even though the issues of fact isolated by the appellant on many occasions are presented to a jury for its consideration, once a court has taken jurisdiction of an action equitable in nature for a valid judicial purpose, it retains jurisdiction for all purposes necessary to do complete justice as between the parties relating to the subject matter of the suit. Equity will give whatever relief the facts warrant. (*Mingenback v. Mingenback,* 176 Kan. 471, 271 P. 2d 782.) The appellant

not being entitled to a jury trial as a matter of right, the trial court was well within its power and discretion when it ruled the issues of fact would be determined by the court. (See, *Fisher v. Rakestraw et al.,* supra, and cases cited therein.)

Were the findings of the trial court supported by the evidence introduced at the trial?

The appellant's challenge of the trial court's findings numbered 8, 10, 12 and 15 is in substance a request that this court reweigh the evidence and determine from the cold record which has the greater probative value. This is not the function of the appellate court. The Supreme Court accepts as true the trial court's findings of fact when they are based upon competent evidence; and on appeal it is of no consequence that there may have been much contradictory evidence adduced at the trial, which, if believed by the trial court, would have compelled entirely different findings of fact and an entirely different judgment. When the error assigned is that the findings and judgment are contrary to the evidence, it is only necessary on appeal to consider whether there is some competent and sufficient evidence upon which the judgment is based. A consideration or recital of the contradictory evidence cannot aid in correctly determining that question. (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057; *In re Estate of Guest,* 182 Kan. 760, 324 P. 2d 184; *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184 Kan. 209, 336 P. 2d 469.) It was held in the case of *In re Estate of Guest,* supra:

"Where findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, this court's power begins and ends with a determination whether there is any competent substantial evidence to support them, and where findings are so supported they are accepted as true and will not be disturbed on appeal." (Syl. ¶ 2.)

The appellant's present counsel, Robert M. Baker, argues in his brief that he represents an "ignorant moron" and that through misrepresentations, fraud, coercion, undue influence, brought to bear upon Clara B. Sutherland by the appellee and his attorney and sharp legal practice (presumably by her former counsel, David J. Wilson) that the appellant was induced to enter into a contract for the sale of a 1,600-acre ranch worth $56,000 for a consideration of $20,000.

The record discloses no evidence of misrepresentations, fraud, coercion or undue influence brought to bear upon Clara B. Sutherland, except the *assertion* of the appellee's claim to the land in question, which the appellant contends is worthless, invalid and frivo-

lous. It is argued the assertion of such claim to the appellant indicates bad faith and is intentional misrepresentation and actual fraud.

We shall assume present counsel for the appellant has been over-zealous in describing his client, there being no disclosure in the record that she has been declared incompetent by a court of competent jurisdiction or that a guardian has been appointed for her, and that he does appear in court representing Clara B. Sutherland as his client.

The record discloses Clara B. Sutherland was a woman sixty-six years of age at the time of trial; that she had gone as far as the fourth grade in school and could not read or write very well; and that *eight months after the contract in question was executed* she was placed in St. Francis Hospital in Wichita, Kansas, under the constant observation of Dr. C. J. Kurth, a doctor of medicine with specialty in neurology and psychiatry, for a period of ten days for the purpose of making a psychological and psychiatric examination to determine her mental status *as of that time.*

As a result of the testing Dr. Kurth concluded "Mrs. Sutherland was a person who was of low mental capacity as a normal part of her personality. That this type of personality becomes tense and apprehensive and incapable of functioning too well under stress or pressure." He testified:

"Q. Does she have the mental ability to take a position in the business world in any shape or form or of any degree?

"A. It is my opinion that she would be unlikely to make sound business opinions *without good advice or counsel.*" (Emphasis added.)

He also testified:

"The results of the I. Q. test showed a verbal I. Q. of 67, a performance of 68 and a full scale I. Q. of 65. The Rorshack test showed that the patient's ability to comprehend was vague, and that there was a possibility that this was due to mental retardation or organic process, meaning organic changes . . . ."

The appellant says in her brief:

"If this court can agree with the trial court, that the appellee had a valid claim upon the Sutherland Ranch, then the settlement and compromising of that claim is good consideration, and the contract should be upheld.

"If this Court disagrees with the trial court and finds that the appellee had no valid claim on the Sutherland ranch, then the contract must fail as being inadequate consideration."

It must be remembered this is an action for specific performance of a contract to convey real estate, and the validity of the appellee's

claim is not directly before the court. In an action for specific performance the term "adequate consideration" does not mean the full equivalent of value. It means a consideration which is not so greatly disproportionate to value as to offend against the fair dealing which should characterize business transactions. Furthermore, something more than inadequacy of price is necessary before specific performance will be refused. (*Greenwood v. Greenwood*, 96 Kan. 591, 152 Pac. 657.)

In *Shoop v. Burnside*, 78 Kan. 871, 98 Pac. 202, it was said:

". . . While inadequacy of price is not sufficient of itself to avoid a decree for performance, it is a circumstance which will be taken into consideration with all the facts in determining whether a court of equity is called upon to afford relief . . ." (p. 876.)

It is now the settled law in Kansas where one in good faith asserts a claim not obviously invalid, worthless or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim. (*Reed v. Kansas Postal Telegraph & Cable Co.*, 125 Kan. 603, 264 Pac. 1065, and authorities cited therein.)

In *Shrader v. McDaniel*, 106 Kan. 755, 189 Pac. 954, it was held:

"While compromises and settlements, like other contracts, must be supported by a consideration, it is enough to support the agreement that there was a doubtful question, and where the parties to a compromise act in good faith and one agrees to pay, and the other to accept a certain sum in satisfaction of his liability upon a claim, there is sufficient consideration for the compromise. (Syl. ¶ 4.)

In the opinion the court approved the language in Ruling Case Law, which also gave the reason for the rule, as follows:

" 'If the element of good faith characterizes the controversy, and this, in the larger sense, is saying it is free from fraud, the best considered cases hold that the compromise should be supported without regard to the character of the claims; for if the merits of the claims are to be adjudicated in every instance the right of honest disputants decisively and finally to compromise and settle their controversy is denied, and this without assurance that the judgment imposed on them is less fallible than their own.' (p. 882.)

" 'It has been held that the dispute itself is not required to have been about a claim or matter actually doubtful. If the parties *bona fide*, and on reasonable grounds, believed it to be doubtful, it is a sufficient consideration to support a compromise, even if there is a certain defense to it' . . . (p. 882.)" (p. 761.)

Other cases holding to the same effect are *Sawtelle v. Cosden Oil & Gas Co.*, 128 Kan. 220, 277 Pac. 45; *Ralston v. Mathew*, 173

Kan. 550, 250 P. 2d 841; and *Clements v. Manson,* 111 Kan. 403, 207 Pac. 753.

Regarding the assertion of the appellee's claim and its possible validity, unless there is something to point out or indicate the contrary, good faith and honesty of purpose are to be presumed. (*Reed v. Kansas Postal Telegraph & Cable Co.,* supra.) Here there is nothing to indicate the appellee was acting in bad faith in the assertion of his claim, but on the contrary he had been advised by good lawyers that he had a good case, and he evidently felt he was entitled to the land in question. (See, *Clements v. Manson,* supra.) The appellee made out a *prima facie* case. He introduced the contract into evidence and showed its execution. The appellee testified and as part of his case David J. Wilson, the appellant's attorney at the time the contract in question was executed, and two other witnesses were called and testified.

As a part of the appellant's defense in the trial court six witnesses were called whose testimony related solely to the nature and validity of the appellee's claim to the land in question. Their testimony could have properly been part of the appellee's case, since it tended to establish the validity of the appellee's claim. The trial court, therefore, had abundant evidence before it that the appellee's claim was not frivolous or fictitious, but one which was *bona fide* and pressed in good faith.

The record discloses that Clara B. Sutherland, prior to the execution of the contract in question on the 10th day of January, 1959, was represented by David J. Wilson, an attorney at law of Meade, Kansas. After she was initially approached concerning the claim of Eugene A. Sutherland to the land in question, she consulted with Mr. Wilson who carried on negotiations with Eugene A. Sutherland and his attorney, Albert L. Kamas, concerning the purchase of the land in question and settlement of the disputed claim. These negotiations resulted in an oral agreement by Clara B. Sutherland to accept $15,000 and forbearance of the claims of Eugene A. Sutherland for the purchase of the land. Arrangements were made for the parties to meet on the 10th day of January, 1959, in the office of David J. Wilson, the attorney for Clara B. Sutherland, to prepare a written contract. Pursuant thereto the parties met in the office of Mr. Wilson. Present were the persons named in the trial court's finding No. 8, and there is no conflict in the evidence on this point.

At the meeting the appellant refused to go ahead with the settlement on the basis of $15,000 and forbearance of legal action. She said Bobby Smith had offered her $25,000 for the land in question and had offered to pay for any lawsuit. She then said she thought she was entitled to $20,000, and that she would be able to dispose of it for $20,000. In accordance with the appellant's wishes Mr. Wilson negotiated further and held out for the $20,000 requested. When the appellee finally agreed to this figure the appellant said she was ready. Mr. Wilson called in his secretary and dictated the contract, discussing the various provisions as he proceeded, principally with counsel for the appellee. The contract was typed while the parties waited. Upon completion it was read in the presence of all and a few changes were indicated, whereupon the appellee and his attorney were sent out of the room and Mr. Wilson discussd the contract in private with the appellant and her daughter and son-in-law. After the private conversation the contract as corrected was signed by the parties and notarized, and the appellee gave the appellant a check for $5,000 which she accepted.

At the time the contract was executed on a Saturday morning, the 10th day of January, 1959, a correct legal description of the land was not available. Therefore, the appellant was instructed to bring the abstracts to Mr. Wilson's office the next Monday morning for the preparation of the deed. The appellant complied and brought the abstracts but never returned to sign and acknowledge the deed after delivery of the abstracts.

While all the persons were in Mr. Wilson's office on the Saturday morning in question, Robert M. Baker, an attorney at law from Ashland, sat in an automobile with Bobby Smith parked outside Mr. Wilson's office. At one point while the parties were in the office Mr. Baker came up to the hall of Mr. Wilson's office and inquired of him what was going on. He was told that an agreement was being drawn. Mr. Baker requested that Clara B. Sutherland be identified for him, and Mr. Wilson pointed her out. Mr. Baker was then asked who he represented, but he would not say and finally turned and left.

On Monday evening, January 12, 1959, Mr. Wilson received a telephone call from Mr. Baker who talked to him about the contract, and said Mrs. Sutherland was unhappy with the contract and thought that she hadn't had a fair deal.

There is testimony that on Saturday after signing the contract the appellant "was glad to get it out of the road"; that "she was quite willing to get it over with." There is also testimony that her daughter, Zaidee Hill, "was well pleased with it herself" and said "if it was what her mother wanted it was what she wanted."

The appellant testified:

"They had offered me $10 or $15,000 and I thought the land was worth more than that. I didn't know how much it was worth and I figured I ought to have $20,000 out of it anyway.

"Q. Did Mr. Wilson advise you to sign this contract?

"A. No, not necessary. I was supposed to sign it.

"Q. Now, did he tell you not to sign it?

"A. No, he didn't.

"Q. He left the decision up to you?

"A. Just up to me. He never told me anything. He just kind of let me study it out myself.

"Q. Do you remember, Mrs. Sutherland, in Mr. Wilson's office when Gene agreed to pay you the $20,000 for the land?

"A. Yes. You asked him two or three times before he agreed to finally give it.

"Q. He agreed to give you the $20,000 and not bring any other action against you; isn't that right?

"A. That is what it was supposed to be."

After the appellee agreed to give $20,000 in Mr. Wilson's office, Zaidee Hill testified:

". . . And I told Mama then, I said, 'Now you don't have to sign nothing.' I said, 'You don't have to sign anything if you don't want to.' I said, 'Don't sign it if you don't want to.'

. . . . . . . . . . . . . .

"Q. Then your mother said that she would take that, didn't she? The $20,000.

"A. Yes.

"Q. But she had single-handedly brought the price up from what we had offered to $20,000. Dave Wilson didn't do it, did he?

"A. No, he didn't set no price.

"Q. She did it, didn't she?

"A. Yeah, I guess."

Subsequent to the telephone call by Mr. Baker to Mr. Wilson on January 12, 1959, the appellant made every effort possible to avoid going through with the contract.

In rebuttal the appellee called Mr. Wilson, who was under attack, and his testimony concerning his representation of the appellant covers approximately ten pages of the counter abstract. (Note,

finding No. 11 is not challenged.) He testified on cross examination by Mr. Baker as follows:

"Q. . . . Did you advise Mrs. Sutherland to sign this contract?

"A. After the completion of the contract and after we were in there and discussed the thing I said, 'Mrs. Sutherland, if this is what you want you should go ahead and sign it.'

"Q. Did you actually advise her to sign it?

"A. I can't recall that I did, Bob. The thing is that she had asked for the $20,000 from the day she came in the office almost, and that was the thing that she apparently wanted, and in view of all the circumstances why I thought that was best for her.

"Q. But you did not advise her to sign the contract?

"A. I might have. I might have said—I'm sure I said, 'If this is the way you want it, why, go ahead and sign it.'

"Q. Did you advise her not to sign it?

"A. No, I did not advise her not to sign it.

"Q. Did Mrs. Sutherland say a number of times in your office that she didn't want to sign the contract?

"A. If she had said that I wouldn't have let her, Bob.

"Q. Did you personally read the contract to her?

"A. We read it over. I don't know whether you would call it personally. We read it over in her presence, Bob.

"Q. To her word for word, the entire contract?

"A. We read it over paragraph by paragraph and discussed it.

"Q. Did you explain it to her?

"A. Well, I explained it to her the best I knew."

The appellant in rebuttal denied Mr. Wilson's testimony. She testified:

"He never read that contract. Him and Kamas got their heads together and they stood there and suggested to themselves. But he never mentioned a word out loud that I heard."

The trial court in its memorandum decision said:

"The Court in observing the defendant on the witness stand believes that the defendant is capable, with competent counsel, of understanding what her position was in entering into the contract.

"The observation of the Court as to the evidence in the case is that it tends to show that if the decedent was placed under great stress, duress and coercion, that the greater amount thereof was undoubtedly exercised after she entered into the contract.

"The testimony that she was taken to a psychiatrist to determine her mental condition indicates, from the psychiatrist's own statement as to her response to him for three or four days, that she was under obvious stress from what must have occurred to get her to consent to being subjected to such an examination.

"The testimony in this case on the part of the defense is especially in

confusion as to the facts involved as to what went on at the time of the making of the contract.

"The Court is a little bit confused in what the allegations were of sharp practice, which way that was directed. However, the Court finds, so far as counsel David J. Wilson is concerned, that there is no reliable evidence of any sharp practice on the part of Mr. David J. Wilson. And I don't see that there is any indication to point to sharp practice on the part of counsel representing the plaintiff in this case, if that is the way it was directed. The Court isn't apprised of just how the sharp practice allegations were directed.

"The Court finds specifically that Mrs. Sutherland was represented by able and competent counsel from the evidence; that she entered into the contract, knowing full well what the effect of the contract was."

The general rule is that a contracting party is bound by an agreement to which he assents, where the assent is uninfluenced by fraud, violence, undue influence, or the like, and he will not be permitted to say he did not intend to agree to its terms. A contracting party is under a duty to learn the contents of a written contract before signing it, and if, without being a victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligations thereunder. (*Maltby v. Sumner*, 169 Kan. 417, 219 P. 2d 395, and authorities cited therein.) If a person cannot read an instrument, it is as much his duty to procure some reliable person to read and explain it, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents. (*Maltby v. Sumner*, supra.)

Other cases on the subject are *Focke v. Havel*, 110 Kan. 690, 205 Pac. 349; *Stegman v. Professional & Business Men's Life Ins. Co.*, 173 Kan. 744, 252 P. 2d 1074; and *Bailey v. Talbert*, 179 Kan. 169, 294 P. 2d 220.

The record presented to this court for review discloses competent substantial evidence to support the findings made by the trial court. We therefore accept the findings as true and will not disturb the judgment based upon them. The trial court properly applied the law to the facts in its determination of the case.

The law favors the compromise and settlement of disputes and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. (*Nauman v. Kenosha Auto Transport Co.*, 186 Kan. 305, 349 P. 2d 931, and cases cited therein.)

We find no merit in the appellant's contention the trial court was prejudiced in hearing the case. Errors assigned regarding the exclusion of evidence have been carefully considered and rejected, either because they have no merit and do not warrant extended discussion, or because the testimony initially excluded was ultimately admitted in evidence through other witnesses.

When considered in the light of the record presented, all contentions urged by the appellant for reversal of the judgment have failed to establish error, or make it affirmatively appear there was irregularity in the case which prejudicially affected the substantial rights of the appellant. (G. S. 1949, 60-3317.)

The judgment of the lower court is affirmed.