No. 47,107

F. H. Geiger and Ada B. Geiger, his wife, *Appellees*, v. Thurman C. Hansen and Jeanne M. Hansen, his wife, *Appellants*.

(519 P. 2d 699)

Opinion filed March 2, 1974.

*J. Roger Hendrix,* of Marshall, Hawks, McKinney & Hendrix, of Topeka, argued the cause, and *Robert L. Marietta,* of Marietta, Kellogg & Lord, of Salina, was with him on the brief for the appellants.

*Howard A. Spies,* of Schroeder, Heeney, Groff & Spies, of Topeka, argued the cause, and *John F. Gernon,* of Gernon & Gernon, of Hiawatha, was with him on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: This action was filed to recover a balance of $42,500 claimed to be due on a contract for the sale of corporate

stock. The plaintiffs, Mr. and Mrs. Geiger, recovered judgment in the lower court and the defendants, Mr. and Mrs. Hansen, have appealed.

Mr. Geiger commenced the operation of a grain elevator in Everest, Kansas, in about 1933. For a good many years Mr. Hansen was employed as assistant manager and bookkeeper for the business. He was apparently a valued and trusted employee, as well as a friend, and relations between the Geigers and the Hansens were cordial. In 1962 Mr. Geiger determined to incorporate the business under the style of F. H. Geiger Grain, Inc. Seven hundred fifty shares of capital stock were issued, seven hundred forty-five shares being issued to Mr. and Mrs. Geiger and five shares to Mr. Hansen.

Sometime prior to January 2, 1964, the Geigers and the Hansens entered into discussions for the sale and purchase of the elevator. The negotiations culminated in a written agreement dated January 2, 1964, for the sale of seven hundred forty-four shares of Geiger stock to Mr. and Mrs. Hansen, with Geiger retaining one share. The business was valued at $110,000, making the stock worth approximately $145.85 per share. The total purchase price of $110,000 was payable $25,000 in cash and the remainder in ten annual payments of $8500 each on the second day of January of each year beginning January, 1965. The agreement called for the reissue of the Geigers' stock, less one share, in the names of Mr. and Mrs. Hansen, and that the certificates be placed in escrow with the Union State Bank of Everest. It was agreed that two hundred shares should be released as security for the initial $25,000 down payment and that additional shares would be released to secure the subsequent annual payments on a prescribed basis. Reference will be made to other pertinent provisions as this opinion progresses.

Following execution of the agreement, so the record reflects, Mr. Hansen was elected president of the corporation. Mr. Geiger became vice-president, Mrs. Hansen took over the chores of secretary-treasurer, and the Hansens assumed active management of the elevator business. In 1966 the corporate name was changed to Hansen Grain Inc. The shares of stock were reissued in the new name and placed in the file cabinet at the elevator office.

Difficulties began to beset the company late in 1968 and eventually led to a receivership in the District Court of Brown County, Kansas, from which the company has never emerged so far as the

record reflects. The Hansens made the principal payment due January 2, 1969, but they defaulted in the interest payable at that time and the contract has been in default ever since. The petition in the present lawsuit was filed July 23, 1970.

The Hansens have not denied that they have defaulted in payments due under the contract, but they have filed a counterclaim in the amount of $33,750 which they premise on the following clause found in the contract:

"It is further agreed between the parties hereto that if default is made of any of the payments as set out herein, or for a period of 60 days after due date, then this contract shall be null and void and all of the stock issued in the names of the said parties of the second part shall be cancelled by F. H. Geiger Grain, Inc. and re-issued by F. H. Geiger Grain, Inc. in the name of the parties of the first part and said parties of the first part shall pay to said parties of the second part 50% of the amount paid on the principal of this contract, less amount borrowed (plus interest) by said parties of the second part from Union State Bank of Everest, Kansas, or any other loan agency or participating bank where said common stock of F. H. Geiger Grain, Inc. has been placed as security for monies borrowed."

In response to the counterclaim the Geigers filed a reply asserting the following defenses:

"5. Further answering defendants' Counter-Claim, plaintiffs allege that the provision in the contract relating to a 50% refund to defendants in the event of default, the terms of which are fully set out in numbered paragraph 4 of defendants' Counter-Claim, was not intended by either party of the contract, to run for the life of the contract, and that said contract should be reformed on the grounds of mutual mistake.

"6. Further answering defendants' Counter-Claim, plaintiffs allege that defendants are not entitled to the relief they seek in said Counter-Claim for the reason that defendants have grossly diminished the value of the corporation, by misappropriation of funds, and personal loans from said corporation, and that the contract did not contemplate that plaintiffs should have to repurchase the corporation for any sum, while said corporation was owed large sums of money by defendants, or was in a bankrupt condition by reason of said loans to defendants, and mismanagement by defendants."

A number of the findings made by the trial court appear pertinent to the issue on which we believe this case must turn:

"6. All the payments made on this contract to the plaintiffs were made by the Hansen Grain Inc. except perhaps the last payment. These payments under the terms of the contract were the responsibility of the defendants individually.

"10. On October 15, 1969, the defendants made an assignment to Olin Mathieson Chemical Corporation of all their rights in the agreement. . . . At this time the Hansen Grain Incorporated was indebted to Olin Mathieson

Chemical Corporation Inc., in the amount of approximately $130,000.00 as shown by their claim filed in the Receivership case. . . .

"16. The forfeiture clause which is the basis for the defendants counter claim was inserted in this agreement at the request of the plaintiff, F. H. Geiger.

"17. The testimony of F. H. Geiger and Harry E. Miller, one of the attorneys who prepared the agreement was that this clause was inserted for the protection of the defendant, Jean M. Hansen, in the event that if something happened to Mr. Hansen, Mrs. Hansen would not be able to operate the elevator.

"18. This assumed that the elevator would be a going corporation, and not an insolvent corporation.

"22. On May 31, 1969, loans by the corporation to shareholders totalled $62,571.45.

"23. The defendants have not repaid the corporation this indebtedness. These loans have not been repaid by the defendants.

"25. The defendants testified that they did not bargin (sic) or ask for the default clause as is contained in the agreement between the parties . . ."

In material part the trial court concluded:

"3. The default clause was inserted in the agreement ony for certain purposes as set out in the findings of fact and the testimony of the parties was admitted to show this intention."

Since the Geigers have asked that the contract be reformed on the ground of mutual mistake, the crux of this lawsuit, as we see it, is two-fold: (1) Was the testimony of Mr. Geiger admissible, and (2) was the evidence sufficient to sustain the findings?

The Hansens take the position that the 50 per cent clause is clear and unambiguous; that oral testimony is not admissible to vary or explain its provisions; and, hence, it was error on the part of the trial court to admit Geiger's testimony.

We are aware of the general rule that parol evidence is inadmissible to explain or vary the terms of a plan, unambiguous contract, and this court has long adhered to the same. (See 2 Hatcher's Kansas Digest [Rev. Ed.] Evidence, § 186, p. 564.) However, we believe the rule does not preclude resort to parol testimony under the circumstances of this case. Here it is contended that the 50 per cent clause was gratuitously placed in the contract to protect Mrs. Hansen in case something happened to her husband and she did not care to continue the business. Hence it is claimed the clause was not to be operative unless such a contingency occurred within two years.

The general subject is treated in 3 Jones on Evidence, (6th Ed.) Gard, § 16.4 in these words:

"Where suit is brought to compel a defendant specifically to perform a written contract, parol evidence may be given by him to show that the alleged

agreement is not the true agreement—in other words, that by reason of mistake there was no consent to the apparent agreement.

"Under proper pleadings the defendant may have the mistake corrected in the same proceeding by showing the actual agreement; this is especially true in those states where the modern system of pleading has been adopted. So in other actions, legal or equitable in their nature, brought on written instruments, either party is at liberty under proper pleadings to prove a mistake, and to have reformation of the contract. In some cases it has been held that such a defense can be proved although equitable relief is not asked by the defendant in his pleading."

Continuing the discussion of the subject matter in § 16.40, Judge Gard goes on to say:

"The rule is generally recognized, too, that parol evidence is admissible to show that a written paper which in form is a complete contract was not to become binding until the performance of some condition precedent which rests in parol.

. . . . . . . . . . . . . . .

"Parol evidence may be given to prove the existence of any separate oral agreement constituting a condition precedent to the attaching of any obligation under any such contract, grant or disposition of property." (pp. 172, 173.)

In *Brown v. Bradley*, 259 S. W. 676, 678 (Tex. Civ. App.), the court said:

"It is a general rule that, where parties assumed to contract, and there is a mistake with reference to any material part of the subject matter, there is no contract because of the want of mutual assent necessary to create one. (Citing cases.)"

There is authority, also, to the effect that while unilateral error is not of itself sufficient to avoid a contract it may be a good defense where hardship amounting to injustice would otherwise be inflicted on a party by holding him to the agreement and where it would be harsh and unreasonable to enforce the agreement against him. (17 Am. Jur. 2d Contracts, § 146, p. 493; *Buck v. Equitable Life Assur. Society*, 96 Wash. 683, 165 Pac. 878.)

Mr. Geiger's testimony is clear and positive that his gratuitous proposal was conditioned in this respect: that Mrs. Hansen would not care to continue operation of the elevator in the event something happened to her husband, and that the proposal would apply for a term of two years. Such were the conditions on which the clause was to be effective, according to Mr. Geiger. In our opinion his testimony was admissible on that point, not to vary the terms of the clause, but to show on what contingency it was to apply.

It is true that Mr. Hansen's testimony was considerably different. He said he understood that if he defaulted in payments, 50 per

cent of what he paid would be returned to him. But it is clear also from his testimony that he did not bargain for or request the provision but that the same came gratuitously from his friend, Mr. Geiger.

The trial court, at first hand, heard the evidence regarding the circumstances under which the clause was inserted in the agreement. It was the trial court's function to reconcile whatever conflict there may have been in the testimony and to determine what were the conditions on which the clause was to be operative. If there be evidence to support the court's conclusion it must be sustained on appeal. (1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, §§ 507, 508.)

In his testimony given at the trial, Mr. Hansen conceded that all payments made to the Geigers came from corporate funds with the single exception of the last $8500, and that he owed the company $60,000. The trial court was aware of the receivership proceedings pending in its own court, of the Olin Mathieson indebtedness of $130,000, secured by pledge of the Hansen stock, of other outstanding indebtedness and of the generally gutted condition of the corporation.

Taking the evidence as a whole, we cannot say that the findings and conclusions entered by the trial court with respect to the clause in controversy are not supported by the record.

In view of what has already been said we believe it is unnecessary to mention or discuss other matters included in the defendants' statement of points.

The judgment of the court below is affirmed.

SCHROEDER, J., not participating.