FMA FINANCIAL CORPORATION,
Plaintiff and Appellant,

v.

HANSEN DAIRY, INC.; Steven L. Hansen; Larell Hansen; Muriel O. Hansen; and Val Jean Hansen, dba Hansen Dairy, a partnership; and Federated Dairy Farms, a Utah cooperative association, Defendants and Respondents,

v.

James M. LEVIE and LeVoy Christensen, Third–Party Defendants and Respondents.

No. 16528.

Supreme Court of Utah.

Aug. 21, 1980.

Milo Marsden, Jr., and Grant A. Hurst of Marsden & Liljenquist, Salt Lake City, for plaintiff and appellant.

Gayle Dean Hunt, Salt Lake City, for defendants and respondents.

James Levie, pro se, for third–party defendants and respondents.

CROCKETT, Chief Justice:

Plaintiff FMA Financial Corporation, a leasing company, brought this action seeking damages for an alleged breach of a written agreement to lease a used corn silo and other farm equipment to defendants–lessees Hansen Dairy, Inc. The defendants asserted the defense that the silo was not installed on their property in time for use as agreed; and they counterclaimed for the rentals they had already paid. In addition, they filed a cross–complaint against James M. Levie who, in order to finance the transaction, had conveyed the subject property to the plaintiff, and who was then to deliver the equipment to the defendants and reconstruct the silo on their farm.

Upon a plenary trial of the issues, the court found in accordance with the defendant's contention that there had been "a complete failure of consideration" as to the defendants, and that they were entitled to recover $19,342.80 from the plaintiff as reimbursement for lease payments, minus $5,000 for two feed wagons which they retained. However, the court further found that the plaintiff was entitled to recover $36,000 from Mr. Levie, representing what had been paid for the silo and the equipment, less certain sums credited to him, described below.[1]

The plaintiff appeals, contending that the court erred in finding a failure of consideration because: (1) The lease agreement did not provide when the construction of the silo was to be completed; and (2) The defendants had allegedly prevented Mr. Levie from completing the construction. The

plaintiff also urges that the defendants should be estopped to claim there was a failure of consideration because, knowing that the silo construction was incomplete, they signed an acceptance notice, subsequently delivered by Mr. Levie to the plaintiff, which provided that the "items received by us . . . were and are in good order and condition and acceptable to us as delivered or installed."

The defendants owned and operated a dairy farm near Centerfield, Utah. They had had prior dealings with Mr. Levie in leasing some grain silos obtained by him, but financed by another leasing company. Pursuant to negotiations, on June 25, 1973, the defendants agreed with him to lease two feed wagons, a blower, and a used silo, which Mr. Levie had located in Nevada. Their preliminary agreement included that the defendants would pay $835 per month for five years for the stated equipment, which Mr. Levie would transport and install on the defendants' farm. However, when the defendants requested a lower monthly payment and a longer lease term, Mr. Levie contacted the plaintiff, which indicated a willingness to finance the transaction. Pursuant to negotiations between Mr. Levie and Mr. Scott Mayme, an official acting for the plaintiff, it was arranged that the plaintiff would purchase, pay for, and take title to the above–described equipment from Mr. Levie, and then lease it to the defendants who would make the payments to the plaintiff.

This case is in that class where there is considerable difference between the versions of what happened as to essential occurrences. In accordance with the standard rule of review, we assume that the trial court believed the testimony which supports his findings.[2] He found and concluded that the plaintiff gave a lease contract to Mr. Levie, which included the acceptance notice referred to above, which he was to deliver

---

1. As to this finding against defendant Levie, the judgment recites: "subject to such procedural requirements as the law requires," but Levie is not a party to this appeal.

2. *Robertson v. Hutchinson*, Utah, 560 P.2d 1110 (1977); *Fillmore City v. Reeve*, Utah, 571 P.2d 1316 (1977).

to the defendants, obtain signatures thereon and return the documents to the plaintiff. The court also found that the defendants executed the documents on August 1, 1973, on the condition that the silo would "be erected and operational by corn harvest time," i. e., about the end of the first week in September, 1973. The contract required the defendants to make 84 payments of $748.64 each, with the first two installments to be paid as an initial commitment fee.

Mr. Levie returned the signed documents to the plaintiff's office and, on August 7, 1973, he issued a sales invoice to the plaintiff and received a $36,000 check for the equipment. Although he subsequently delivered the two wagons and the parts for the silo to the defendants' farm, and later installed a concrete footing, Mr. Levie never completed the construction of the silo because it ʾhad become obvious that the requirement that the silo be installed and operational by corn harvest time could not be satisfied.

Included in the findings and judgment is that the parties agreed that the defendants would retain the two feed wagons, valued at $2,500 each. Some of the parts for the silo, including those which had been delivered to the defendants' farm, were sold for $5,000 and those proceeds were delivered to the plaintiff. The parts which were not sold and were left at the defendants' farm, or in Mr. Levie's possession, could be retrieved by the plaintiff and Mr. Levie given credit for their value.

In its attack upon the finding of failure of consideration for the lease, plaintiff argues that the agreement is "integrated, clear, definite, and unambiguous" and the defendants' attempt to incorporate the requirement that the silo was to be installed by corn harvest time into the agreement violates the parol evidence rule.

The standard parol evidence rule is that extraneous evidence may not be used to contradict or vary the terms of a written instrument.[3] That rule serves a useful purpose in appropriate circumstances in safeguarding the integrity of such documents. However, it should not be applied with any such unreasoning rigidity as to defeat what may be shown to be the actual purpose and intent of the parties, but should be applied in the light of reason to serve the ends of justice.[4] It does not preclude proof of agreements as to collateral matters relating to the contract or its performance, so long as they are not inconsistent with nor in repudiation of the terms of the written agreement. Nor does it prevent proof that a party did not perform an obligation which it was understood and agreed by the parties was a condition precedent to the contract becoming effective.[5] That applies to the circumstances here, where the court found that the parties had an understanding and agreement that in order for the silo to be useful to the defendants it was to be installed by harvest time, and that this was an essential to the contract becoming effective. Whether there was such a separate agreement, not in contradiction of the written document, is for the trier of fact to determine.[6]

Significantly, the court found that there was no contact directly between the plaintiff and the defendants, "but all of the dealings were done by or through the Levies." Thus, a key proposition to be borne in mind as bearing on all of the issues in this case is that Mr. Mayme, acting for the plaintiff, entrusted the handling of its interests in this transaction to Mr. Levie.

3. *Youngren v. John W. Lloyd Const. Co.*, 22 Utah 2d 207, 450 P.2d 985 (1969); *E.A. Strout Western Realty Agency, Inc. v. Broderick*, Utah, 522 P.2d 144 (1974); *Maine v. Garvin*, 76 N.M. 546, 417 P.2d 40 (1966); *Geiger v. Hansen*, 214 Kan. 83, 519 P.2d 699 (1974).

4. *Youngren v. John W. Lloyd Const. Co.*, supra, note 3, 450 P.2d at 987.

5. *J. & J. Const. Co., Inc. v. Mayernik*, 241 Or. 537, 407 P.2d 625 (1965); *Geiger v. Hansen*, supra, note 3; *Lewis v. Roper*, Wyo., 579 P.2d 434 (1978); *Hicks v. Bush*, 10 N.Y.2d 488, 225 N.Y.S.2d 34, 180 N.E.2d 425 (1962).

6. *Youngren v. John W. Lloyd Const. Co.*, supra, note 3.

Consequently, his knowledge in that regard should be imputed to it.[7]

▪ There was ample basis in the testimony of the defendants Stephen L. Hansen, Val Jean Hansen and Larell Hansen upon which the trial court could make its findings that the lease was negotiated and executed upon the understanding that the defendants were to make the lease payments on the condition that the silo would be installed and operational by corn harvest time. Accordingly, the plaintiff's attack thereon must fail.

▪ The same observations are applicable to the plaintiff's urgence that the defendants unjustifiably prevented Mr. Levie from completing the installation of the silo. In that regard, plaintiff fails to take cognizance of the fact that it was Mr. Levie who told the defendants that the silo could not be constructed by harvest time as had been represented; and that this was the reason that the defendants had informed him that, inasmuch as it would not be available for use in the fall harvest, they were not interested in leasing the silo. In the light of those facts, as found by the trial court, there is no basis for upsetting his conclusion that there had been a failure to furnish the agreed consideration by the plaintiff and that therefore, the defendants were not bound to continue making payments on the contract.

The essence of the plaintiff's argument that the defendants should be estoped to claim failure of consideration is that when the defendants signed the acceptance notice, "they knew the silo was incomplete, yet represented in writing it was complete." Plaintiff further asserts that, since it relied on that acceptance notice and paid Mr. Levie for the silo and other equipment, the defendants should not be allowed to repudiate that representation and claim that "the installation or delivery of the equipment by Levie was not satisfactory."

The doctrine of equitable estoppel is designed

... to prevent one party from deluding or inducing another into a position where he will unjustly suffer loss. As applicable here, the test is whether there is conduct, by act or omission, by which one party knowingly leads another party, *reasonably acting thereon*, to take some course of action, which will result in his detriment or damage if the first party is permitted to repudiate or deny his conduct or representation.[8] [Emphasis added.]

Mr. Levie testified that when Mr. Mayme gave him the lease contract and acceptance notice, he told Mr. Mayme he needed the money as soon as possible and that the silo was still in Nevada, but the delivery and installation of it would be completed within 30 days. Mrs. Levie, who attended the meeting, testified to the same effect. Mr. Levie further stated that one week later, about August 7, he returned the signed acceptance notice to Mr. Mayme and that it was known to both parties that the silo had not been installed. Mrs. Levie reinforced this by her testimony that at that later meeting, in a discussion with Mr. Mayme, it was indicated that he was aware that the silo was still in Nevada.

▪ It should be acknowledged that Mr. Levie originally testified that it was Mr. Mayme who gave him the $36,000 check, but later stated that he received the check from Ms. Shanni Staker, plaintiff's credit manager. As to other aspects of the evidence, Mr. Mayme's version was that he informed Mr. Levie that the plaintiff would

---

7. We so state in awareness of the language in the lease which provided that: "Lessee understands and agrees that neither supplier, nor any salesman or other agent of supplier, is an agent of lessor .... and no representation as to equipment or any other matter by supplier shall in any way affect lessee's duty to pay the rent, and perform its other obligations as set forth in this lease."

8. *J. P. Koch, Inc. v. J. C. Penney Co., Inc.*, Utah, 534 P.2d 903, 905 (1975). See statements in *Place v. Place*, 207 Kan. 734, 486 P.2d 1354 (1971); *Strong v. County of Santa Cruz*, 15 Cal.3d 720, 125 Cal.Rptr. 896, 534 P.2d 264 (1975). That the burden is on the party asserting an estoppel, see *Pickett v. Associates Discount Corp.*, Wyo., 435 P.2d 445 (1967).

make no payment until the silo and equipment had been delivered to the defendants and that they signed the acceptance, indicating their satisfaction therewith. He also said that Mr. Levie had told him that the equipment would be so delivered within a week; and that the $36,000 check was not delivered to Mr. Levie until he returned the signed acceptance. Despite this testimony, reasonable from the plaintiff's point of view, if it is related to the total evidence as discussed herein, it does not negate the trial court's findings or conclusions.

In regard to the contentions of the parties and the testimony discussed herein relating to the issue of estoppel, the trial court found that "there were errors which took place in the inter–office procedures of FMA Leasing and that they knew, or should have known that, when they released said $36,000.00 that the building (as a working silo at Hansen's premises) was not in existence." The court concluded that the defendants therefore "are not estopped from setting forth facts indicating the silo was not completed, even though they signed the acceptance notice." [9]

On the basis of what has been said herein, we are not persuaded that the plaintiff has met its burden on appeal of showing that the trial court was in error in refusing to believe that it had established its primary cause of action against the defendants for recovery on the contract, or that the defendants should be estopped from refusing to perform. Accordingly, the judgment is affirmed. Costs to defendants (respondents).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

9. We have stated that a party claiming an estoppel, "if at the time he acted had knowledge of the truth or had means by which with reasonable diligence he could acquire the knowledge," cannot claim to have been misled by relying upon the representations of another. *Coombs v. Ouzounian*, 24 Utah 2d 39, 465 P.2d 356, 358 (1970).