(621 P.2d 443)

No. 51,765

BLANCHE E. SQUIRES, *Appellee,* v. PHIL WOODBURY, *Appellant.*

Petition for review denied February 20, 1981.

Opinion filed December 24, 1980.

*Robert E. Southern,* of Great Bend, for the appellant.

*Jerry M. Ward* of Ward & Berscheidt, of Great Bend, for the appellee.

Before FOTH, C.J., ABBOTT and SPENCER, JJ.

SPENCER, J.: This is an appeal from an order which reformed the terms of a written lease executed by the parties.

The evidence at trial disclosed that defendant owned a mobile radio communications business named Mobilfone of Kansas, and sought to acquire a lease on property in order to erect a radio tower. Defendant and one of his employees, William Koeller, discovered what they felt would be a suitable location for construction of the tower on plaintiff's land. Defendant and Koeller

approached plaintiff in June, 1977, and spoke to her at her house. Plaintiff was 79 years of age at the time.

Plaintiff told defendant and Koeller that she had leased tower space to Lane-Wells Company several years earlier. The Lane-Wells lease, which was introduced into evidence, was for a term of five years with an option to renew for five years. Plaintiff explained to defendant that the Lane-Wells tower was not rebuilt after it fell in an ice storm during 1973. Plaintiff expressed interest in defendant's proposal and suggested they come back with a lease similar to the Lane-Wells agreement. The term of the proposed lease between the parties was not discussed in their initial conversation. Defendant testified he was unaware of the provisions of the Lane-Wells lease.

The following day, June 24, 1977, defendant, Koeller, and Koeller's wife returned to plaintiff's residence with the written lease in question. According to defendant and the Koellers, defendant explained the lease in detail and read it to plaintiff word-for-word. Defendant suggested that plaintiff discuss the lease with someone else before signing it. Defendant and the Koellers testified plaintiff appeared to read the lease and that she appeared coherent during all discussions and conversations concerning it. At the conclusion of the discussion, plaintiff signed the lease and defendant thereafter incurred expenses in erecting the tower. The lease clearly provided for a term of fifteen years with an option to renew for fifteen years.

On February 16, 1978, plaintiff filed this action, seeking cancellation of the lease due to "the gross inadequacy of consideration, inability of the plaintiff to understand and comprehend the effect of the lease agreement, her weakness of mind, and the representations made to her   .   .   .   ." A pretrial order was filed setting forth the following issues:

"VI.   QUESTIONS OF FACT:

"A.   Was there an impediment of the mental processes of the lessor at the time [that] the lease was taken?

"B.   Is the consideration called for in the lease under all the circumstances inadequate and if so, the extent of the inadequacy?

"VII.   QUESTIONS OF LAW:

"A.   Is there such inadequacy of consideration that standing alone or coupled with something else, the lease should be canceled?

"B.   Is whether or not there is such inadequacy of consideration coupled with some other circumstances such as some limited mental faculties of the lessor at the time the lease was entered into that the lease should be canceled?

"C. If either A or B are so, what type of relief should the Court grant and if those things are so, then this Court becomes a Court of Equity?"

Trial was held August 30, 1979, at which time the evidence described above was adduced. In addition, plaintiff testified she was unable to read the lease due to her poor eyesight, and that she thought the parties had agreed to a term of the lease exactly like the Lane-Wells lease. She stated she did not remember defendant reading the lease to her and that she discovered the written term of the lease when a person approached her seeking to buy her property and read the provisions of the lease to her.

On December 6, 1979, the trial court filed its journal entry, finding in relevant part:

"1. That there was no impediment to the mental processes of the plaintiff at the time the lease agreement was executed.

"2. That there was a possibility of impediment of the plaintiff due to her physical condition—that is, inadequate eyesight.

"3. That the consideration for the lease agreement was adequate.

"4. That there was a mistake on the part of the plaintiff as to the term of the lease agreement—it being her understanding that it would be for five (5) years instead of the fifteen (15) years as provided; and

"5. That the lease agreement should be modified to a term of Five (5) years commencing from September 1, 1979 with the option of the defendant to renew for an additional five (5) years; and that the annual consideration for said lease agreement should be Three Hundred Dollars ($300.00) per year on the original term and any renewal thereof, with the annual payments of the defendant made since June 4, 1977, to date to be applied on the term of the lease commencing on September 1, 1979."

Defendant here contends the trial court's decision is inconsistent with its findings of fact and contrary to law. In particular, defendant attacks the court's finding as to plaintiff's mistaken belief of the term of the lease. We note that the other findings are supported by substantial competent evidence and cannot be disturbed on appeal. *Schaefer & Associates v. Schirmer*, 3 Kan. App. 2d 114, Syl. ¶ 4, 590 P.2d 1087 (1979).

The general rule is that competent parties may make contracts on their own terms, provided such contracts are neither illegal nor contrary to public policy, and in the absence of fraud, mistake or duress, a party who has entered into such a contract is bound thereby. *Augusta Medical Complex, Inc. v. Blue Cross*, 227 Kan. 469, Syl. ¶ 4, 608 P.2d 890 (1980). It has been held that one who signs a written instrument is bound by its terms, in the absence of fraud, undue influence or mutual mistake as to its contents, regardless of the person's failure to read and understand its terms.

*Washington v. Claassen,* 218 Kan. 577, Syl. ¶ 2, 545 P.2d 387 (1976). Our cases have recognized that a contracting party is under a duty to learn the contents of a written contract before signing it [*Sutherland v. Sutherland,* 187 Kan. 599, 610, 358 P.2d 776 (1961)], and if a person cannot read an instrument it is as much a duty to procure some reliable person to read and explain it before it is signed as it would be to read it before signing, if able to do so. *Maltby v. Sumner,* 169 Kan. 417, Syl. ¶ 5, 219 P.2d 395 (1950).

A long line of older decisions expressed the view that in the absence of fraud a unilateral mistake is insufficient to relieve the mistaken party from the terms of an agreement. *Snider v. Marple,* 168 Kan. 459, 465, 213 P.2d 984 (1950); *Green v. Insurance Co.,* 112 Kan. 50, Syl. ¶ 2, 209 Pac. 670 (1922); *Commission Co. v. Mowery,* 99 Kan. 389, 397, 161 Pac. 634 (1916), *modified* 99 Kan. 399 (1917); *Griffin v. O'Neil,* 48 Kan. 117, 119, 29 Pac. 143 (1892). Recently, the Kansas Supreme Court reaffirmed that, in the absence of fraud, a unilateral mistake will not excuse the nonperformance of a contract, as applied in a construction bid bond situation. *Triple A Contractors, Inc. v. Rural Water Dist. No. 4,* 226 Kan. 626, 603 P.2d 184 (1979). While the above cases appear to announce the general rule, in *Geiger v. Hansen,* 214 Kan. 83, 87, 519 P.2d 699 (1974), the court recognized that there is authority for the proposition that unilateral error may be a good defense to a contract where hardship amounting to injustice would be inflicted by holding a party to the agreement, and where it would be harsh and unreasonable to enforce the agreement. The *Geiger* case likewise indicated that in an action either legal or equitable in nature brought on a written instrument, either party is at liberty, under proper pleadings, to prove mistake and to have reformation of the contract. 214 Kan. at 87.

The *Geiger* decision appears to be in conformity with the modern rule that unilateral mistake will justify affirmative relief where the mistake was known to the other party to the transaction. 13 Williston on Contracts § 1573 (3rd ed. 1970). The following statement appears in 3 Corbin on Contracts § 607 (1960), p. 662:

"The case is materially different when a party signs or accepts a written instrument without reading it, thinking that he knows its contents. If the contents are not what he supposed, he is assenting under a mistake of fact. This case should be dealt with just as are other cases of unilateral mistake. If the other party has no

reason to know of the mistake, and has so materially changed his position that it can not be restored, the first party will be held bound. His conduct in signing without reading is certainly not to be recommended. Generally, it may properly be described as negligent. But it is not wrongful; and he should not be penalized as for a wrongful act. No more than in the case of other unilateral mistakes should the other party be permitted to reap a profit, if the mistake is convincingly proved and he can be restored to his original position."

In *Coleman v. Holecek,* 542 F.2d 532 (10th Cir. 1976), the court relied on the above statements in finding that no contract had been made. In that case, Holecek explicitly informed his insurance agent that he wished to let his policy expire when his next installment came due. The agent handed Holecek a document which provided for immediate cancellation. Holecek signed the document without reading it. The Tenth Circuit concluded:

"[T]he agent permitted, if indeed he did not induce, Holecek to sign the contract knowing that its terms were materially different from what Holecek understood them to be. Under these facts no binding contract was created." 542 F.2d at 535-536.

Finally, it is to be noted that there is authority for the rule that a unilateral mistake may be a ground for rescinding, but not for reforming, a contract. *Moffett, Hodgkins & C. Co. v. Rochester,* 178 U.S. 373, 385, 44 L.Ed. 1108, 20 S.Ct. 957 (1900); *Hearne v. Marine Insurance Company,* 87 U.S. (20 Wall.) 488, 491, 22 L.Ed. 395 (1874). While numerous federal decisions have followed such rule, Professor Williston noted:

" 'This distinction has been sometimes overlooked by courts in the application of the general rule, and some confusion and uncertainty thereby created. But it stands upon sound reason, and is inherent in the very nature of the different remedies.' " 13 Williston on Contracts § 1573 (3rd ed. 1970), pp. 489-490.

In the present case, the trial court found that plaintiff was mentally competent to contract with defendant and that the contract as executed was supported by adequate consideration. The trial court made no findings of fraud, undue influence or duress in the execution of the lease agreement and we find no evidence in the record to support such findings, especially in light of the court's conclusion that the contract was supported by sufficient consideration.

The court's finding that a mistake occurred as to the term of the lease is supported by substantial competent evidence. While the trial court did not designate it as such, it is clear that the mistake was unilateral. There is no evidence that defendant had a misun-

derstanding as to the term of the lease. However, in order to justify relief from a unilateral mistake, as noted above, it must be shown that the mistake was known to the other party to the transaction.

In this case, there is no finding that defendant had knowledge of plaintiff's mistaken belief as to the term of the lease. The evidence disclosed unequivocally that defendant and plaintiff did not explicitly discuss the term of the lease at their initial conversation and that defendant was not aware of the term of the Lane-Wells lease. Although plaintiff testified she understood that the terms of the two leases would be the same, defendant indicated the parties agreed only that the size of the towers would be similar. At any rate, there is no evidence that plaintiff ever furnished defendant with a copy of the Lane-Wells lease or informed defendant of the term of that lease. Viewing the evidence most favorable to plaintiff, it is apparent that defendant was not aware of plaintiff's mistaken belief when the contract was signed.

Plaintiff admitted that defendant advised her to take the lease to someone else to read it over. While the trial court's finding concerning plaintiff's poor eyesight is supported by the evidence, there is no reason appearing of record which justifies plaintiff's alleged failure to read the instrument in question. Thus, while the trial court's factual findings appear to be sound, we conclude the trial court improperly reformed the lease where there was no evidence of fraud, duress, undue influence, unconscionability or the like, and where the record indicates that defendant was unaware of plaintiff's mistaken belief at the time the lease was executed. In view of the court's conclusion that the contract was supported by adequate consideration, we find no evidence indicating that enforcement of the contract as written will cause harsh or unreasonable hardship. On the other hand, in view of defendant's reliance on the contract, reformation or rescission of that agreement could cause substantial hardship.

Reversed and remanded with directions to enter judgment for defendant.