No. 21,924.

FRANK E. FURST and FRED G. THOMAS, Partners, etc., *Appellees*, v. B. McNITT (HENRY BUSS and ELDRIDGE PHILLIPS, *Appellants*).

### SYLLABUS BY THE COURT.

1. WRITTEN GUARANTY—*Performance of Contract—Action—Joinder of Guarantors and Principal Obligor.* Under section 38 of the code of civil procedure (Gen. Stat. 1915, § 6928), guarantors who are only secondarily liable on a written obligation may be joined as defendants in an action against the principal obligor, and the rights of the guarantors can be equitably and adequately safeguarded in the judgment by directing execution against the property of the principal obligor and exhausting that source of satisfaction before issuing execution against the property of those secondarily liable.

2. SAME — *Right of Action against Unconditional Guarantors.* Where a guaranty is unconditional, the default of the party whose contracts, fidelity or conduct is guaranteed, matures the liability of the guarantors, and they may be proceeded against without awaiting a fruitless execution against the defaulting principal.

3. SAME. Where a principal obligor is admittedly insolvent, an indemnified party may proceed at once against such obligor's guarantors, without first pursuing a futile action against the principal.

4. SAME—*Pleadings—Joinder of Defendants—Single Cause of Action.* Appropriate allegations narrating the execution of an undertaking guaranteeing the performance of a contract, the default of the principal obligor, and the default of the guarantors, recite facts which state essentially but one cause of action against the principal and guarantors, and, as against a demurrer, there is neither misjoinder of parties nor of causes of action therein.

5. SAME—*Want of Diligence—Guarantors Not Released.* Want of diligence in prosecuting claims against a principal obligor will not relieve guarantors who bound themselves specifically and in writing that extension of time to the principal obligor should not relieve them from liability.

6. SAME — *Guaranty May be Revoked by Guarantor.* A guaranty of faithful performance of future obligations, with no limitation of the time such guaranty is to endure, is ordinarily subject to revocation by the guarantor; and while notice of such revocation does not relieve the guarantor from liabilities already incurred, it does relieve him from further liability.

7. SAME—*Revocation of Guaranty by Guarantor.* As against a demurrer, a guarantor's denial of liability and notice thereof to the party indemnified should be construed as a revocation of the guaranty, unless

the written terms of the guaranty will not admit of that interpretation.

Appeal from Rooks district court; CHARLES I. SPARKS, judge. Opinion filed February 8, 1919. Modified and affirmed.

*O. O. Osborn,* and *W. B. Ham,* both of Stockton, for the appellants.

*W. K. Skinner,* and *S. N. Hawkes,* both of Stockton, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs brought this action against B. McNitt, Henry Buss, and Elbridge Phillips, the defendants, upon the following written obligation:

"In consideration of Furst & Thomas extending credit to . . . . Salesman [B. McNitt] we, the undersigned, jointly and severally, guarantee to them the faithful performance of this contract by him, and full settlement according to its terms, for all goods sold to him on credit by them, hereby waiving notice of acceptance and all notice as to the account of said Salesman, and we agree that any extension of time to him shall not release us from liability hereon.

"(Guarantors sign here)          P. O. Address.          Business or Occupation.

.     .     .     .          .          .     .     .     .          .     .     .

   "Henry Buss,          Speed, Kansas,          Farmer,
   "Elbridge Phillips,          Logan, Kansas,          Farmer."

Plaintiffs' petition alleged that in 1912 they entered into a contract with B. McNitt, thereby appointing him their agent for the sale of their wares, and in consideration of their extension of credit to McNitt, these defendants and others signed the above obligation, and that McNitt had made default in his contract to pay for certain merchandise furnished to him by plaintiffs, that McNitt was insolvent, and that defendants refused to pay.

Defendant Buss, after denying that he had signed the instrument, answered (2) that the instrument was given without consideration, (3) that when he learned that plaintiffs claimed that he had signed he immediately, on January 5, 1915, gave them notice that he denied liability, (4) that there was a misjoinder of causes and of parties as theretofore urged in his overruled demurrer to plaintiffs' petition, and (5) that

plaintiffs had full knowledge of McNitt's defaults but neglected to proceed against him while he still had property to satisfy his debt to plaintiffs.

Plaintiffs' demurrer to these numbered defenses was sustained.

Defendant Phillips' answer admitted (1) that he signed some instrument while working in his corn field, that he could not read without spectacles, and that McNitt, who presented the paper to him with a request for his signature, stated that it was only a recommendation of McNitt, and being unable to read and believing its contents to be what McNitt told him, he signed the document; (2) that there was a misjoinder of causes and of parties as theretofore urged in his overruled demurrer to plaintiffs' petition, and that no execution had been issued against McNitt nor any effort made to collect the debt from him; (3) that there was no consideration for defendant's signature to the instrument; and (4) that he had notified plaintiffs in January, 1915, that he denied liability, at which time McNitt had goods of plaintiff and outstanding accounts and other sources amply sufficient to satisfy plaintiffs' account, if they had used reasonable diligence, and that plaintiffs knowingly allowed McNitt to continue the sale of their merchandise and to collect and sequester outstanding accounts, when they might have collected from him.

This action was filed August 11, 1917, some two years and seven months after defendants notified plaintiffs that they denied liability.

Plaintiffs' demurrer to all parts of Phillips' answer was sustained.

Both defendants appeal. They first project the question whether the instrument signed by defendants was a contract to guarantee the payment of McNitt's debt or a contract to indemnify plaintiff against the default of McNitt. Defendants contend that their obligation belongs to the latter class, and they invoke the rule that an indemnitor is not liable until the indemnified parties have exhausted their remedies against the principal obligor. (*McNall v. Burrow & White*, 33 Kan. 495, 6 Pac. 897; *Burton v. Dewey*, 4 Kan. App. 589, 592, 46 Pac. 325; 12 R. C. L. 1057, 1090-1094.)

This contention is susceptible of several answers. Our code of civil procedure, section 38, provides:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promisory notes, and indorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff." (Gen. Stat. 1915, § 6928.)

This provision tends to lessen litigation, and the rights of parties who are only secondarily liable can be equitably and adequately safeguarded in the judgment, by directing that execution be first issued upon the property of those primarily liable, and that that source of satisfaction be exhausted before levying upon the property of those secondarily liable. (*Emery v. Bank,* 97 Kan. 231, 233, 155 Pac. 34; *Bank v. Bowdon,* 98 Kan. 140, 157 Pac. 429.)

Moreover, the obligation signed by defendants, in form and scope, is an unconditional guaranty, and under that sort of an obligation the default of the party whose contracts, fidelity or conduct is guaranteed, matures the liability of the guarantors, and the party for whose benefit the guaranty was made need not await an unsuccessful execution against the principal obligor before proceeding against the guarantors. (*Crissey v. Loan Co.,* 59 Kan. 561, 567, 53 Pac. 867; 14 A. & E. Encycl. of L., 2d ed., 1141, 1153; 12 R. C. L. 1089.)

It should also be noted that plaintiffs' petition alleged that the principal obligor, McNitt, was wholly insolvent, and that the debt could not be collected from him. There is an ancient legal maxim that the law requires no one to do vain or useless things (2 Bouvier's Law Dictionary, Rawle's 3d Revision, 2143), and the rule is well established that where the principal obligor is admittedly insolvent, the indemnified party may proceed at once against the guarantors, without first pursuing a futile action against the principal. (12 R. C. L. 1091.) In a note to *Fall v. Youmans* (67 Minn. 83), 64 Am. St. Rep. 398, 399, it is said:

"And, in some jurisdictions, it is held that due diligence requires the prosecution of the debtor to execution and return of *nulla bona,* and that insolvency is no excuse for a failure to prosecute; . . . But in other jurisdictions the principle is recognized that the law requires no idle act, and that it is more just not to require a suit, with all its attendant expense and trouble, where it must be fruitless, and to allow, under some circumstances, the diligence to be waived by the party for whose benefit it is required. Hence, it is held in some states, that if the maker of a

note, or other debtor, be so utterly insolvent that an action against him would be fruitless, the holder of the guaranty is not obliged to institute legal proceedings against the debtor before resorting to a suit on the guaranty. [Citing cases.] . . . *It is clear that insolvency does not excuse suit unless the fact is proved in some way, but the ascertainment, upon correct and sufficient proofs, of entire and notorious insolvency [or if that fact is conceded by demurrer], is recognized by the law as answering the demand of due diligence, and as dispensing with the more dilatory evidence of a suit."

The foregoing also disposes of defendants' second contention—the misjoinder of parties and of causes of action. The default of the principal and of the guarantors was essentially but one cause of action.

Their third contention is that the demurrer conceded a gross want of diligence on the part of plaintiffs and want of effort to collect from McNitt, when if diligence had been used, plaintiffs might have collected from him while he still had funds and property to satisfy his obligations. The trouble with that defense is, that the guarantors bound themselves "that any extension of time to him [McNitt] shall not release us from liability." So the long delay in bringing suit against McNitt (and defendants) is insufficient to discharge and relieve the defendants.

However, the pleadings of both defendants did raise a partial defense which the demurrer could not meet. An excerpt from the answer of defendant Phillips will serve to develop the point:

"For further defense to plaintiffs' cause of action this defendant says that as early as January 5th, 1915, he notified plaintiffs that he would not be held as a guarantor for any obligations of the principal defendant, . . . That said notice was so given to and received by plaintiffs.

. . .

"That said defendant repeatedly since said January 5th, 1915, and while said defendant, McNitt, had the means, and plaintiffs had the opportunity to have collected the same, notified plaintiffs of his refusal to be held as a guarantor for the debts of said McNitt, but that plaintiffs continued up to the present time to neglect the collection of their said debts from their said debtor, McNitt."

Of course, this mere disavowal of liability would not relieve the defendants therefrom; but did not this correspondence have the legal effect of terminating any further liability of defendants on any later furnishing of goods to McNitt or any credit extended to him after that correspondence was received by the

company? The contract can hardly be construed to bind the defendants in such manner that plaintiffs might continue to furnish goods to McNitt indefinitely on the strength of defendants' guaranty. They should have the right to bring to a conclusion *sometime* the creation of new or additional liabilities against them. The law seems to allow them to do this. In 12 R. C. L. 1088, it is said:

"A guaranty based on no consideration moving to the guarantor, which contemplates future credit to be extended to another, and which is thus continuing in character, is subject to revocation by the guarantor, and he is not liable for credit extended to the principal debtor after the creditor has received notice of the revocation. Of course, the guarantor cannot revoke the guaranty so as to escape liability for credit already extended, but as to future credit the guaranty is considered to be but little more than an offer to guarantee which the guarantor may withdraw at his pleasure. The creditor may recover for all advances made before he receives notice of the revocation, but the giving of the notice limits the guarantor's liability to the credits already given."

(See, also, *Dry Goods Co. v. Yearout*, 59 Kan. 684, 54 Pac. 1062.)

As against a demurrer, the court holds that the correspondence between the parties in January, 1915, and subsequent thereto, should be construed as a notice revoking defendants' guaranty of future credits to McNitt. The trial court can take this point into consideration in the further proceedings in this case, and, with this modification, the judgment is affirmed.