No. 28,591.

BERT BOGART, *Appellee*, v. S. A. DAY, *Appellant*.

(275 Pac. 145.)

Opinion filed March 9, 1929.

*E. C. Minner*, of Dodge City, for the appellant.
*W. C. Gould*, of Dodge City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action against defendant to recover on the latter's guaranty of a promissory note for $838.89 executed by John C. Smith, payable to S. A. Day on or before April 24, 1922, and transferred to plaintiff and indorsed thus: "Payment guaranteed by S. A. Day."

Accompanying the transfer of the note was a written contract between the parties covering details of the business transaction whereby plaintiff acquired the note, one paragraph of which, in part, reads:

"Party of the second part [S. A. Day] agrees to guarantee payment of the notes after the party of the first part [plaintiff] has made every reasonable effort to collect same. If suit is entered against any note maker the party of the second part is to be consulted as to the expense in proceeding to collect by suit and the expense of suit shall be arranged for between the parties to this contract. Notes are not to be renewed or extended under this guarantee longer than September 1, 1922, without the approval of party of second part."

The defense to the action was chiefly based upon plaintiff's alleged want of energy to collect from the maker—

"Defendant further alleges that plaintiff and said J. C. Bogart failed to make

reasonable effort to collect said note from the maker thereof, to wit: John C. Smith; that plaintiff and said J. C. Bogart renewed and extended said note to a date subsequent to September 1, 1922, without the approval of this defendant. That on and prior to September 1, 1922, the said John C. Smith was financially responsible and able to pay said note, and that if plaintiff had made reasonable effort he could have collected said note with the interest thereon from the said John C. Smith on and prior to September 1, 1922."

Plaintiff's reply contained the following:

" . . . At frequent intervals both before and after September 1, 1922, this plaintiff conferred with defendant as to means and methods of collecting the note in suit from the maker thereof; that he, the said plaintiff, under the direction of the defendant herein, both before and after September 1, 1922, spent a great deal of time and some money in an attempt to collect said note from its maker."

Jury trial; verdict for plaintiff; two lists of special questions were answered thus:

"Q. 1. After September 1, 1922, did John C. Smith have property which with reasonable effort Bert Bogart could have found in collecting the note in question in this case? A. Doubtful.

"Q. 2. Did Bert Bogart make reasonable effort to collect said note from John C. Smith after September 1, 1922? A. Doubtful.

. . . . . . . . . .

"Q. 1. What was the financial worth of John C. Smith upon April 24, 1922? A. Doubtful.

"Q. 2. What effort did plaintiff, Bert Bogart, make to collect the note in question from John C. Smith? A. Bogart interviewed Smith on or about the due date of note. Made two trips to Arkansas.

"Q. 3. Did plaintiff ever notify defendant that he, plaintiff, was unable to collect said note from John C. Smith? A. Yes.

"Q. 4. Did plaintiff notify defendant that said John C. Smith had failed to pay said note? A. Yes.

"Q. 5. If you answer question 4 in the affirmative, state the date of such notice. A. 1923-1926."

Defendant's motion for judgment on the special findings was denied, and judgment was entered for plaintiff.

Defendant assigns error on the overruling of his demurrer to plaintiff's evidence, his theory being that it failed to show that plaintiff had put forth the prescribed effort to collect the note which was the condition precedent to the enforcement of his rights under defendant's guaranty. However, plaintiff's evidence did show that a few days before the note was due he talked with defendant, telling him it would be necessary to do something about it, and defendant told plaintiff he did not think anything could be done at that time, that

he could not then collect from Smith, the maker; and that he knew of nothing in the hands of Smith that would be subject to levy, and defendant asked plaintiff to carry the note for a while. About a year later plaintiff again talked with defendant about the note, and defendant told plaintiff he did not believe Smith was ever going to be able to pay. The parties discussed the advisability of levying on a wheat crop belonging to Smith, and defendant said he did not think it would pay expenses. Smith had a truck which was security for the note, but it was not in good condition and plaintiff did not take it, or subject it to legal process, because it would not pay the incidental expense to its taking. In this opinion defendant agreed, saying the truck "didn't amount to much." Once, when the possibility of getting Smith to pay was the subject of discussion, defendant suggested to plaintiff, "We could take it out of Smith's hide." Smith moved to Arkansas and plaintiff made two futile trips to that state endeavoring to collect from him, but could find no property of Smith's which could be subjected to the payment of the note.

The foregoing summary of plaintiff's evidence sufficiently shows, if true, that about all plaintiff failed to do was to reduce the note to judgment against Smith and cause an execution to issue thereon. This possibility was contemplated by the terms of the guaranty, and the expense of such suit was not to be undertaken without the assent and coöperation of the defendant guarantor. Moreover, it was quite clear, as against a demurrer to the evidence, that such a judgment and execution would have been altogether fruitless, and such proceedings were not a condition precedent to the enforcement of the guaranty. In *Furst v. Buss*, 104 Kan. 245, 178 Pac. 411, it was said:

"Where a principal obligor is admittedly insolvent, an indemnified party may proceed at once against such obligor's guarantors, without first pursuing a futile action against the principal." (Syl. ¶ 3.)

See, also, 28 C. J. 970, 971.

The demurrer to plaintiff's evidence was properly overruled.

Error is also assigned on the overruling of defendant's motion for judgment on the special findings of the jury. It is argued that the jury's special findings make it conclusive that plaintiff did not exercise reasonable diligence to collect; that to interview the maker about the time the note was due and to make two trips to Arkansas was not such a degree of diligence as contemplated by the guaranty. And defendant further argues that the jury's first finding that it was

"doubtful" if plaintiff made reasonable effort to collect is a negative finding, a finding that he did not exert the requisite effort to collect. That argument might be difficult to overcome but for the other special findings of the jury. What Smith was worth on April 24, 1922 (the due date of the note), was "doubtful"; and what he was worth on September 1, 1922 (the time limit for any renewal of the note), was likewise "doubtful." Those are likewise negative findings. Defendant had based his defense on his allegations that at and about those dates Smith was financially responsible and if plaintiff had made reasonable effort he could have collected. It was incumbent on defendant to maintain such pleaded defense. This he did not do, and the jury's special findings are to the contrary. It therefore followed that however diligent and energetic plaintiff might have been he could not have collected, and consequently the guarantor was not excused.

The judgment is affirmed.