**MERCANTILE BANK OF KANSAS CITY, Plaintiff,**

v.

**FARMERS & MERCHANTS STATE BANK, Defendant.**

Civ. A. No. 87–2083–0.

United States District Court,
D. Kansas.

Nov. 7, 1988.

Scott I. Asner, Olathe, Kan., Louis A. Huber, III, M. Jan Day, Smith, Gill Fisher & Butts Inc., Kansas City, Mo., for plaintiff.

Jeffrey L. Griffith, Griffith & Griffith, Derby, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This case was tried to the court on September 6, 7 and 8, 1988. Having considered the evidence presented, the court is now prepared to rule and makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

*Findings of Fact*

1. Plaintiff Mercantile Bank of Kansas City ("Mercantile") is a banking institution organized and existing under the laws of the State of Missouri. Mercantile is a citizen of Missouri and has its principal place of business in Missouri.

2. Defendants Farmers and Merchants State Bank of Derby ("Farmers") is a banking institution organized and existing under the laws of Kansas. Farmers is a citizen of Kansas and has its principal place of business in Derby, Sedgwick County, Kansas.

3. Two of Farmers' customers, L.B. Prior, d/b/a Prior Leasing, and Prior Leasing, Inc., (hereinafter collectively referred to as "Prior") were engaged in the business of purchasing commercial equipment, vehicles and other personal property and leasing it to businesses. In order to finance the purchased equipment, Prior would borrow

money from Farmers and other financial institutions. To secure the loans from Farmers, Prior gave Farmers a security interest in the leased equipment and assigned the leases to Farmers with full recourse.

4. In the spring of 1985, Farmers was at or near its legal lending limit on the Prior loan accounts. Consequently, Farmers decided to ask another bank to participate in the Prior loans, or alternatively, to sell some of its seasoned Prior loans (*i.e.*, those loans with a payment history) to another bank, so that Farmers could continue loaning money to Prior without exceeding its legal lending limit. To that end, Gary W. Fruits, Vice President and Loan Officer for Farmers, discussed with Roger McPeek, Manager of Mercantile's Consumer Loan Department, Mercantile's possible interest in participating in or purchasing the Prior loans.

5. On April 29, 1985, McPeek presented a proposal to the Mercantile Loan and Discount Committee, requesting approval for participation in some of the Prior loans. The Committee conditionally approved the transaction as a participation, subject to a limit of $500,000, and subject to McPeek obtaining further information about Farmers and the Prior lessees. McPeek was to report his findings to his superior, William Messer, Executive Vice President and Senior Lending Officer, who would then give McPeek further instructions on the transaction.

6. Messer subsequently decided that a participation in the Prior loans would not be acceptable to Mercantile because such a transaction would be difficult to document and would be too risky (the lessees were located outside of Mercantile's normal business area and only one lease secured each loan). Messer therefore instructed McPeek to structure the transaction in the following manner: Mercantile would purchase the promissory notes from Prior to Farmers, with Farmers endorsing the notes to Mercantile without recourse, and Farmers would assign the leases to Mercantile with full recourse. According to Mercantile, by structuring the transaction in this manner,

Farmers was able to solve its legal lending limit problem and Mercantile was able to minimize its risk (*i.e.*, Mercantile could not look to Farmers if Prior defaulted on his promissory notes, but could look to Farmers if the lessees defaulted on their leases).

7. According to Farmers, it was concerned with both a legal lending limit problem and a concentration of credit problem on the Prior loans. Although Mercantile's structure for the transaction would solve the lending limit problem, it would not solve the concentration of credit problem. Consequently, Farmers did not intend for the leases to be assigned with full recourse, and claims that the endorsements on the leases were inadvertently typed to read "with full recourse."

8. Farmers' Vice President and Loan Officer, Gary Fruits, prepared the promissory notes, the security agreements and the leases for transfer to Mercantile. The promissory notes were endorsed "without recourse," the assignments of the leases were endorsed "with full recourse," and Gary Fruits read and signed each endorsement on behalf of Farmers.

9. The Prior loan accounts which are the subject of this action were purchased and transferred to Mercantile on May 6 and 23, 1985. Four accounts were transferred on the 6th and twelve were transferred on the 23rd. Mercantile paid Farmers for the notes and the collateral, and Farmers delivered the documents to Mercantile. McPeek reviewed the documentation and found it to be in keeping with Mercantile's understanding of the transaction's structure. The amount of money Mercantile paid Farmers for the notes was computed by reference to the amount of money due on the notes, and not by reference to the amount of money due on the leases.

10. Prior defaulted on all of the promissory notes which had been transferred from Farmers to Mercantile. Mercantile attempted to collect from Prior. Additionally, in early 1986, Mercantile notified the lessees by letter that Mercantile was the assignee of Prior's rights under the leases and that all further lease payments should be made directly to Mercantile. Neither

Farmers nor Mercantile had previously informed the lessees of the transfers.

11. Certain lessees also defaulted. Mercantile made demand on Farmers to pay under its endorsements "with full recourse," but Farmers refused. The following leases are those which Mercantile claims are in default: [1]

| Name | Lease No. | Total Amount Due on Lease |
|------|-----------|---------------------------|
| (a) Don K. Smith | 118FMPLI | $41,798.40 |
| (b) Lynn N. Woodward | 155FM | 25,965.00 |
| (c) Helmer Petterson d/b/a GHR Rebuilders | 110FMPLI | 3,280.00 |
| (d) Patricia J. Prather | 143FM | 9,549.75 |
| (e) Dr. Ralph Johnson | 145FM | 7,543.44 |

Mercantile has not received any payments from any of the above lessees since the time of default, and all amounts prayed for in the complaint remain unsatisfied.

### Conclusions of Law [2]

As the court previously ruled in its Memorandum and Order dated May 24, 1988, the transfer from defendant to plaintiff of a promissory note and the assignment of the underlying security and lease agreements constituted one contract; therefore, an indorsed note, the assignment of the security agreement, and the assignment of the lease agreement must be read and construed together. *First National Bank v. Kaiser*, 222 Kan. 274, 277, 564 P.2d 493, 496 (1977). When construed together, these documents present an inherent conflict: the promissory note was transferred to plaintiff without recourse, while part of the collateral securing the note (the lease agreement) was transferred to plaintiff with full recourse. Because of the ambiguity created by this inherent conflict, a trial was held to determine what the parties intended.

■ The evidence presented at trial indicated that the parties' intentions differed. According to the plaintiff's evidence, Mercantile intended that the transaction be structured as follows: Mercantile would purchase the promissory notes, with Farmers indorsing the notes to Mercantile without recourse, and Farmers would assign the leases with recourse in order to minimize Mercantile's risk. According to the defendant's evidence, Farmers intended that the notes and the lease agreements would be negotiated and assigned to Mercantile without recourse. Thus, Farmers' assigning the lease agreements "with full recourse" was a mistake.

Gary Fruits, Farmers' Vice President and Loan Officer, testified that he prepared the promissory notes and assignments and that he read and signed each indorsement on behalf of Farmers, including those reading "with full recourse." When Mercantile reviewed the documents, it found them in keeping with its intentions. Therefore, Farmers' full recourse assignment was a unilateral mistake, for which it must bear the responsibility. As the Kansas Court of Appeals has held, "in the absence of fraud a unilateral mistake is insufficient to relieve the mistaken party from the terms of an agreement." *Squires v. Woodbury*, 5 Kan.App.2d 596, 599, 621 P.2d 443, 446 (1980). A mistaken party can effectively defend on the basis of a unilateral mistake only "where hardship amounting to injustice would be inflicted by holding a party to the agreement, and where it would be harsh and unreasonable to enforce the agreement." *Id.* (citing *Geiger v. Hansen*, 214 Kan. 83, 87, 519 P.2d 699, 703 (1974)). Additionally, "unilateral mistake will justify affirmative relief where the mistake was

---

1. By letter dated October 7, 1988, plaintiff's counsel informed the court that the amounts due under two of the leases in default, the H.L. Miller & Sons' leases, had been paid in full and the money was being held in defense counsel's trust account. The parties agreed that the money should be paid to plaintiff. Consequently, Lease No. 128FMPLI and Lease No. 136FMPLI are no longer a part of this lawsuit, and Counts II and IV of plaintiff's complaint will be dismissed with prejudice.

2. The court requested additional briefing on three issues. Because of our conclusion that defendant's full recourse assignment was a conditional guaranty and that defendant's liability has been discharged for plaintiff's failure to attempt collection, the court did not address two of those three issues.

known to the other party to the transaction." *Id.*

Holding Farmers to their full recourse assignment is neither harsh and unreasonable nor a hardship amounting to an injustice. Farmers is not an unsophisticated novice in transactions like the one at issue. Mr. Fruits candidly testified that he knew full well the difference between an assignment "with full recourse" and "without recourse." Additionally, although there was some evidence presented which implied that Mercantile knew Farmers had mistakenly assigned the lease agreements with full recourse and simply took advantage of that mistake, the court has determined that the source of this evidence (Dennis Riffle's testimony) was not credible and therefore has discounted it. Consequently, the court has no hesitation in ruling that the lease assignments are enforceable as written.

■ Having determined that the full recourse assignments are enforceable, the court must next determine the liabilities imposed by such assignments. Plaintiff argues that defendant's assigning the lease agreements with full recourse was an absolute and unconditional guaranty of payment upon the lessees' default. Although the court agrees that a full recourse assignment is a guaranty, we do not agree that it is an absolute and unconditional guaranty. The court has been unable to find any cases with facts similar to those before us.[3] Thus, the court has relied on the meaning of the word "recourse" and on an analogy to indorsements of negotiable instruments to determine defendant's contractual liabilities.

"Recourse" means resort to a person who is secondarily liable after the default of the person who is primarily liable. 36A Words & Phrases (1962) (citing *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.

2d 470, 476 (Mo.1946)). Also, "recourse" may be defined as a resort to a source of help or supply. *Id.* (citing *Cook v. Superior Court in and for Los Angeles County,* 12 Cal.App.2d 608, 55 P.2d 1227, 1229 (1936)). Implicit in these definitions of "recourse" is the idea that the obligor will be looked to first, and only if the obligee is not able to obtain satisfaction of the debt from the obligor may the obligee then "resort to" the person who agreed to serve as recourse for the obligor. As explained in C.J.S.:

> Where liability is imposed on the assignor for nonpayment or default by the debtor, the assignee usually cannot proceed against the assignor until he has exercised due diligence in an unsuccessful attempt to recover from the obligor.

6A C.J.S. *Assignments* § 90 (1975). Consequently, a full recourse assignment is a guarantee of payment, conditioned on the debtor's failure to pay and on the assignee's inability to recover from the debtor.

Holding that a full recourse assignor is only secondarily or conditionally liable is consistent with the analogous liability of indorsers of negotiable instruments.[4] The liability of an indorser of a negotiable instrument is explained in section 3–414 of the Uniform Commercial Code:

> Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement....

An indorser is "secondarily" liable because his liability is conditioned on three events: presentment, dishonor and notice of dishonor. In other words, the instrument's holder must make a demand for payment from the person primarily liable on the instru-

---

**3.** Plaintiff relies on *Doenges Motors, Inc. v. Bankers Investment Co.,* 369 P.2d 611 (Okla. 1962) for its argument that a full recourse assignment is an unconditional guarantee. Because the assignor/transferor in *Doenges* assigned both the promissory note and the underlying installment contract "with full recourse," *Doenges* is not exactly on point. Furthermore, the Oklahoma court did not discuss whether the assignee/transferee attempted to collect from

the account debtor before making demand on the assignor/transferor. Consequently, we find *Doenges* offers little guidance to the court and little support for plaintiff's argument.

**4.** Although the promissory notes involved in the transactions at issue are negotiable instruments, the lease agreements are not.

ment, the person primarily liable must refuse to pay, and the holder must inform the indorser that the holder intends to collect from him. *See* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–10 (2d ed. 1980). An unconditional indorsement (*i.e.*, one without words of limitation such as "without recourse") is presumed to be an indorsement "with full recourse." Nevertheless, a full recourse indorsement imposes only secondary liability on the indorser. The court therefore sees no reason to interpret an *assignment* with full recourse differently than an *indorsement* with full recourse and also sees no reason to impose primary rather than secondary liability on the assignor.

Further support for the court's conclusion that an assignment with full recourse, like an indorsement with full recourse, is a conditional guaranty is found in section 3–416 of the UCC and two Kansas cases. Section 3–416 outlines the liability of guarantors. As the Official UCC Comment explains: "An indorser who guarantees payment waives not only presentment, notice of dishonor and protest, but also all demand upon the maker or drawee. Words of guaranty do not affect the character of the indorsement ...; but the liability of the indorser becomes indistinguishable from that of a comaker." Therefore, an indorsement with full recourse is not an unconditional guarantee making the indorser primarily liable, unless the indorser also includes words of guaranty in his indorsement. Two Kansas cases echo the UCC Comment when they speak in terms of a guaranty being *additions to* an indorsement. *See Lumber & Coal Co. v. Robbins,* 104 Kan. 619, 621, 180 P. 264 (1919); *Kellogg v. Douglas County Bank,* 58 Kan. 43, 49, 48 P. 587 (1897); *see also Rawlins County State Bank v. Rummel,* 114 Kan. 597, 600, 220 P. 255 (1923) (quoting both *Lumber* and *Kellogg* with approval).

■ Based on the meaning of the word "recourse" and the analogy to full recourse indorsements on negotiable instruments, the court concludes that defendant's full recourse assignment was a conditional rather than an unconditional guaranty. Since defendant gave plaintiff a conditional guaranty, plaintiff had the duty to proceed against the principal obligors, *i.e.*, the lessees, before attempting to collect from defendant. *See Kansas State Bank & Trust Co. v. DeLorean,* 7 Kan.App.2d 246, 255, 640 P.2d 343, 350 (1982). Plaintiff did not fulfill this duty. After Prior defaulted on the promissory notes, plaintiff notified the lessees to make their lease payments directly to plaintiff. When the lessees failed to make payments, however, plaintiff did not make any attempt to collect from the defaulting lessees. Instead, plaintiff demanded payment from defendant pursuant to its full recourse assignment of the lease agreements. Plaintiff's notifying the lessees of the assignment does not constitute an attempt to collect the monies due under the lease agreements; rather, such notice was necessary to charge the lessees with a duty to pay plaintiff. *See Equilease Corp. v. States Federal Savings & Loan Ass'n,* 647 F.2d 1069, 1073 (10th Cir.1981); *Whisler v. Whisler,* 9 Kan.App.2d 624, 626, 684 P.2d 1025, 1027 (1984).

The court has determined that plaintiff's failure to attempt collection from the lessees relieves defendant of its obligation to pay under the full recourse assignments of the lease agreements. "In order to be relieved from his obligation to pay, a guarantor must establish one of three facts: (1) extinguishment of the debt; (2) a valid release or discharge; or (3) the bar of the statute of limitations as to himself." *First National Bank of Anthony v. King,* 2 Kan.App.2d 519, 520, 583 P.2d 389, 390 (1978). Because plaintiff failed to take the action required of it under the defendant's conditional guaranty, defendant is discharged of liability. *See, e.g.,* 38 Am. Jur.2d *Guaranty* § 108 (discussing conditional guaranties in general) and § 111 (discussing guaranties of collection, a guaranty conditioned upon the creditor's unsuccessful prosecution of the debtor) (1968).

IT IS THEREFORE ORDERED that Counts II and IV of plaintiff's complaint are dismissed with prejudice.

IT IS FURTHER ORDERED that judgment be entered in favor of defendant and against plaintiff.