**MERCANTILE BANK OF KANSAS CITY, Plaintiff–Appellant, Cross–Appellee,**

*v.*

**FARMERS & MERCHANTS STATE BANK, Defendant–Appellee, Cross–Appellant.**

**Nos. 89–3047, 89–3063.**

United States Court of Appeals, Tenth Circuit.

Dec. 10, 1990.

Order Vacating Judgment and Dismissing Appeal March 4, 1991.

Louis A. Huber, III (M. Jan Day with him on the briefs) of Smith, Gill, Fisher & Butts, Kansas City, Mo., for plaintiff-appellant.

Jerry L. Griffith of Griffith & Griffith, Derby, Kan., for defendant-appellee.

Before MOORE and BARRETT, Circuit Judges, and BRIMMER,* District Judge.

BARRETT, Senior Circuit Judge.

Mercantile Bank of Kansas City (Mercantile) appeals from the district court's order and judgment dismissing with prejudice four of Mercantile's seven claims made

---

* The Honorable Clarence A. Brimmer, Chief Judge, United States District Court for the District of Wyoming, sitting by designation.

against Farmers & Merchants State Bank (F & M) in a contract dispute. F & M cross appeals from the district court's denial of F & M's motion for summary judgment as well as the court's final order and judgment and the court's finding in Mercantile's favor on one of the claims.[1] Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

## I.

A summary of the relevant and sometimes disputed facts are as follows:

Two of F & M's customers, L.B. Prior d/b/a Prior Leasing and Prior Leasing, Inc. (both hereinafter collectively referred to as "Prior"), ran a business of purchasing commercial equipment and then leasing the equipment to businesses. To finance the purchase of the equipment to be leased, Prior would borrow money from F & M and would give F & M promissory notes in exchange. To secure the notes, Prior would give F & M a security interest in the equipment leased and would assign the leases to F & M with full recourse.

Attached to the standard lease form was a guarantee contract that the lessee usually signed. The guarantee provided that:

"Immediately upon each and every default by Lessee, subject to the terms and conditions of the Lease respecting notice to Lessee, without any notice to or demand upon Guarantors, Guarantors will pay the Lessor the sum or sums in default and will comply with or perform all the terms, covenants and conditions of said Lease which shall be binding upon the Lessee as provided in said Lease...."

(R., Vol. I, Tab 1, Exh. A).

In the spring of 1985, F & M was at or near the legal lending limit allowed on the Prior loan accounts under Kansas law. F & M wanted to sell some of Prior's loans to another bank so that it could continue originating new loans with Prior and remain within its legal lending limit. During that same period of time, Dennis Riffle, vice president of Mercantile's correspondent

banking division, contacted Gary Fruits, vice president and loan officer of F & M, to develop a relationship with F & M. Fruits informed Riffle of F & M's desire to sell some of the Prior loans. Riffle put Fruits in contact with Roger McPeek, manager of Mercantile's consumer loan department, for further discussions.

On April 29, 1985, McPeek presented a proposal to the Mercantile loan and discount committee, with Riffle present, seeking Mercantile's participation in some of the Prior loans. Under the proposed participation, Mercantile would be at risk for its share of the loans if Prior defaulted and F & M would be responsible for attempting to collect the loans or liquidate the collateral.

F & M claims that Mercantile's committee approved the plan at the meeting without reservation. Mercantile claims that the committee conditioned approval upon further inquiry. Mercantile also claims that William Messer, executive vice president and senior lending officer for Mercantile, subsequently decided that a participation would not be an acceptable risk for Mercantile. Instead, Mercantile alleges that Messer told McPeek to structure the transaction so that F & M would endorse Prior's promissory notes to Mercantile "without recourse" and assign the equipment leases "with full recourse." Mercantile asserts that, by structuring the transaction in this manner, F & M was able to solve its legal lending limit problem and Mercantile was able to minimize its risk because it could look to F & M if the lessees defaulted.

In May, 1985, Fruits instructed his secretary, Betty Chapman, to prepare sixteen of Prior's notes, security agreements and leases for transfer to Mercantile. According to Fruits and Chapman, Fruits drafted the endorsements for Chapman to type on the documents. While the endorsement language typed onto the notes assigned them to Mercantile "without recourse," the language typed onto the leases assigned them "with full recourse." Both Fruits and Chapman understood the difference be-

---

**1.** The court dismissed with prejudice the remaining two claims inasmuch as they were settled by the parties. Those claims are not part of this appeal.

tween the two phrases. After the language had been typed onto the documents, Fruits reviewed the documents, signed them, and sent them to McPeek. The amount of money Mercantile paid F & M for the transaction was computed by reference to the amount of money due on the notes, and not by reference to the amount of money due on the leases.

F & M claims that Messer never told McPeek to have Fruits endorse the leases "with full recourse." Indeed, F & M claims that Mercantile intended and agreed to purchase all documents "without recourse," but decided to take advantage of F & M when it realized that Fruits had incorrectly endorsed the leases "with full recourse." To prove its claim, F & M points to McPeek, who does not remember Messer instructing him to have the leases signed "with full recourse," although he does recall that he found nothing out of order when he reviewed the documents after Fruits sent them. F & M also points to Riffle, who claims both that Mercantile never intended to buy the leases "with full recourse," and that McPeek told him that Mercantile "got more than [it] asked for" from the lease endorsements. (R., Vol. VIII, p. 171).

For a period of time, Prior paid Mercantile the sums due under the assigned promissory notes. However, he later became delinquent and defaulted on all the notes. Mercantile obtained a judgment against him and attempted to collect on the judgment, but was unsuccessful.

In early 1986, after Prior's default, Mercantile notified the lessees by letter that Mercantile was an assignee of Prior's rights under the leases and that all further lease payments should be made to Mercantile directly. Seven lessees defaulted, although two of them ultimately paid. The five remaining lessees were Don K. Smith, Lynn N. Woodward, Helmer Petterson, Patricia J. Prather, and Dr. Ralph Johnson. Each of these lessees, except Woodward, had signed both the lease itself and the guarantee portion of the lease. After sending the early 1986 letters, Mercantile took no additional action to collect from Woodward, who did not make payments because he was in bankruptcy. Mercantile also took no additional action to collect from Petterson. However, Mercantile did attempt collection from the other three lessees in the following manner:

a) *Smith:* On June 26, 1986, Mercantile sent Smith a letter which again notified Smith that payment should be made to Mercantile, not Prior. Smith told Mercantile by telephone and letter that he had already paid Prior in full. He sent Mercantile a copy of a cashier's check made out to Prior for the lease's balance as proof;

b) *Johnson:* On June 26, 1986, Mercantile sent the same kind of letter to Johnson that it had sent to Smith; and

c) *Prather:* On September 4, 1986, Mercantile sent Prather a letter which notified Prather she was in default and which demanded that she immediately deliver possession of the leased property to Mercantile.

When Mercantile did not receive payment from the defaulting lessees, it made demand on F & M for the amounts due on the leases under its "with full recourse" assignment; F & M refused to pay.

On February 19, 1987, Mercantile filed the instant suit in district court, alleging that F & M should be required to honor the full recourse assignment on the defaulted leases. F & M moved for summary judgment, claiming that it could not be liable on the leases since the leases acted only as collateral for the promissory notes and the notes themselves were assigned without recourse. The district court denied the summary judgment motion, stating that: despite Article 9 overtones, this was a contract dispute and, as such, must be considered in light of applicable contract principles; the endorsed note, the assignment of the security agreement, the assignment of the lease and F & M's payment to Mercantile should be treated as one transaction; when taken together, the documents presented an inherent conflict due to the promissory notes' "without recourse" endorsement and the leases' "with full recourse" endorsement; this ambiguity in the

contract required further examination before the court could determine the parties' intent; and, given the circumstances of the case, summary judgment was inappropriate. (R., Vol. I, Tab 42).

In September, 1988, the district court held a three-day trial without a jury. At trial, Mercantile argued that, by assigning the leases "with full recourse," F & M had given Mercantile a guarantee that it would pay the amount due on the leases in the event of the lessees' default. F & M argued, *inter alia*, that the parties had intended the leases to be assigned "without recourse," and that the assignment "with full recourse" was a scrivener's error.

On November 7, 1988, the court filed a Memorandum and Order finding in favor of F & M on all pending claims. *Mercantile Bank of Kansas City v. Farmers & Merchants State Bank*, 698 F.Supp. 846 (D.Kan.1988). In its order, the court made findings of fact that: although Mercantile intended the leases to be assigned "with full recourse," F & M did not; Fruits prepared, read and signed each endorsement on F & M's behalf; when Mercantile reviewed the documents, it found them in keeping with its intentions; and Mercantile was unaware that F & M did not intend to assign the leases "with full recourse." *Id.* at 848. Thus, the court concluded that F & M's assignments of the leases "with full recourse" was a unilateral mistake for which F & M must bear the responsibility. *Id.* In making its findings, the court discounted Riffle's testimony regarding Mercantile's knowledge of F & M's mistake in assigning the leases "with full recourse" because the court found Riffle was not a credible source. *Id.* at 849.

Even though F & M was liable under the "full recourse" language, the district court entered judgment in F & M's favor. *Id.* at 851. The court determined that F & M was only secondarily liable on the leases, and that this secondary liability required Mercantile to make collection efforts against the lessees before it could recover from F & M. *Id.* at 850. Further, the court found that F & M's liability under the guaranties was discharged when Mercantile failed to make such collection efforts. *Id.*

In making this determination, the court found that: there were no other Kansas cases with facts like these, so it must rely on the meaning of the word "recourse" and on an analogy to endorsements of negotiable instruments; under 36A Words and Phrases (1962), the word "recourse" means resort to a person who is secondarily liable after the default of the person who is primarily liable; implicit in this definition is the idea that the obligee will look to the obligor first, and only after the obligee cannot obtain satisfaction from the obligor will the obligee "resort to" the guarantor; such a definition is consistent with the analogous liability of endorsers of negotiable instruments because, under Article 3 of the Uniform Commercial Code, an endorser is only secondarily liable since his liability is conditioned on presentment, dishonor, and notice of dishonor; in other words, the instrument's holder must make a demand for payment from the person primarily liable and that person must refuse to pay before the endorser becomes liable; and an Article 3 endorsement without restrictive language is considered an endorsement "with full recourse," so the language on these leases creates no more than the secondary responsibility already created by an endorsement. *Id.* at 848–50.

On November 17, 1988, Mercantile filed a Motion to Amend Judgment, claiming that it *did* demand payment from the lessees in question and that, in the case of Smith and Woodward, demand would have been fruitless and therefore unnecessary under the law. On December 19, 1988, the court filed a second Memorandum and Order, finding that: the first letter sent by Mercantile was not a demand for payment but a necessary notification to lessees to start paying Mercantile, not Prior; the language used in the letters sent to Smith and Johnson only reiterated the information in the first letter and could not be considered a demand for payment; Smith's statement to Mercantile that he had already paid Prior was not enough proof for Mercantile to later claim that making demands on Smith would have been fruitless; and Mercantile did not ap-

pear to discover Woodward's bankruptcy until after filing suit, so it cannot now argue "fruitlessness" in hindsight. As to the Prather lease, the court found sufficient demand was made and amended that part of its November 17 order to find in Mercantile's favor. The court noted that the amount of the Prather lease was in controversy, and asked the parties to reach an agreement on the proper amount. The parties later sent a letter to the district court informing the court that the agreed amount due on the lease was $9,549.75. On January 27, 1989, the court entered judgment in Mercantile's favor for that amount.

## II.

On appeal, Mercantile claims that: (1) the district court erred when it found that Mercantile had a duty to attempt collection from the defaulting lessees before it could make demand on F & M; and (2) even if Mercantile is required to make collection efforts, the district court erred in finding that Mercantile's efforts were insufficient.

Mercantile's claims present us with questions of law. We review such questions *de novo*, *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988), although "[t]he views of a resident federal district judge concerning the local law of his home state are entitled to some deference..." *Corbitt v. Andersen*, 778 F.2d 1471, 1475 (10th Cir.1985).

## A.

■ Mercantile asserts that the district court erred when it found that Mercantile had a duty to attempt collection from the defaulting lessees before it could make demand on F & M. Rather, Mercantile claims that F & M's use of the phrase "with full recourse" created an unconditional guarantee and relieved Mercantile of any duty to first demand payment from the lessees. Mercantile cites *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan.App.2d 246, 640 P.2d 343, 350 (1982), which held that only if a guarantee is conditional must the creditor first proceed against the default-

ing principal obligor before attempting to collect from the guarantor.

In support of its argument, Mercantile relies on *Doenges Motors, Inc. v. Bankers Investment Co.*, 369 P.2d 611 (Okla.1962) (assignment "with full recourse" obligates assignor to pay balance due on pickup truck already repossessed and sold by creditor), and *Russell Nat'l Bank v. Smith*, 383 Pa.Super. 265, 556 A.2d 899 (1989) (recourse assignment which allows recovery against assignor if principal obligor defaults does not become void just because creditor chooses to first take possession of subject property from principal). Mercantile notes that dicta in both cases refer to the assignor's liability upon "default" of the principal. Mercantile argues that this dicta establishes full recourse assignments as unconditional guarantees.

■ At the outset, we note that an assignor is typically "not liable to the assignee for breaches of the assignment by the debtor." 6A C.J.S. *Assignments* § 90 (1975). However, an assignment "with full recourse" acts as a guarantee by the assignee in case of such a breach. *See, e.g., Foster Frosty Foods, Inc. v. Commissioner*, 332 F.2d 230, 233 (10th Cir.1964) (assignment of commercial paper with recourse creates continuing liability of guarantee); *In re Estate of Dahn*, 204 Kan. 535, 464 P.2d 238, 240 (1970) (lessor repurchased collateral from creditor bank "pursuant to its obligation under the recourse assignment").

■ We next address whether such a guarantee is unconditional. The district court's reasoning in that regard is quite persuasive. There is no Kansas law directly on point with the instant case, and the court's reliance both on the meaning of the word "recourse" and on an analogy to Article 3 law is sound. Thus, we adopt the district court's application of these legal principles and hold, as did the district court, that a "full recourse" assignment of nonnegotiable documents without *any other* explanatory language is only a conditional guarantee.

However, while we agree with the district court's application of Article 3 princi-

ples to resolve this case, we conclude that the court did not appropriately apply those principles relative to four of the five leases. The district court correctly noted that the typical endorser of a negotiable instrument is only " 'secondarily' liable because his liability is conditioned on three events: presentment, dishonor and notice of dishonor." *Mercantile Bank*, 698 F.Supp. at 849. But "[w]here a waiver of presentment or notice or protest is embodied in the instrument itself it is binding upon all parties...." Kan.Stat.Ann. 84-3-511(6). In this case, all lessees except Woodward signed not only the lease but also a guarantee of the lease. These guarantees waived presentment, since they were actionable "upon each and every default by Lessee...." (R., Vol. I, Tab 1, Exh. A). They also waived "notice to or demand upon" the guarantors. *Id.* Thus, under Article 3 principles, F & M is unconditionally liable on its "full recourse" assignments, regardless of demand on the defaulting lessees or initial guarantors, since it waived presentment, dishonor and notice of dishonor when it endorsed documents that embodied such waivers.

■ Moreover, "[w]here, prior to [an] assignment, the parties have entered into a recourse agreement, their respective rights and liabilities are determined with reference to the provisions of such agreement applying general principles of construction and contract law." 6A C.J.S. *Assignments* § 90. General contract principles require that "[w]ritings which are made a part of a contract by annexation or reference will be so construed...." *Shunga Plaza, Inc. v. American Employers' Ins. Co.*, 206 Kan. 16, 476 P.2d 642, 644 (1970) (*quoting* 17A C.J.S. *Contracts* § 299 (1963)) (transmittal letter attached to contract should have same force and effect as any other annexed writing "where it is bound to come to the attention of the party."). In this case, F & M's "with full recourse" assignments, which are contracts in themselves, cannot be read in isolation. They must incorporate the terms of the annexed leases. Indeed, the rights and responsibilities of the parties cannot be determined without reference to the documents' terms. Since the unconditional guarantees are an integral part of the documents, F & M's "full recourse" assignments also incorporate the terms of the guarantees and, thus, under basic contract principles, are themselves unconditional guarantees.

■ Woodward, on the other hand, did not sign this unconditional guarantee. Without this guarantee, F & M's "full recourse" assignment must stand on its own terms. Since we have determined that "with full recourse" assignments, without more, are only conditional guarantees, we hold that F & M's assignment of Woodward's lease is conditional and Mercantile was required to make demand on Woodward before pursuing F & M.

Inherent within our holding is a rejection of Mercantile's attempt to analogize the facts of this case with those in *Doenges Motors* and *Russell Nat'l Bank*. Neither of those cases addresses the question presented today. Indeed, the creditors in both *Doenges Motors* and *Russell Nat'l Bank* appear to have treated the full recourse assignment as a *conditional* guarantee, since neither sued the assignor until after demanding payment from the principal and repossessing the subject property. As such, the references in those cases regarding the principal's "default" are not pertinent here.

### B.

■ Mercantile's second claim is that, even if it must make collection efforts against the lessees before proceeding against F & M, the district court erred in finding that the efforts Mercantile did make were insufficient. We have already held in Section I(A) that Mercantile must attempt collection from only one lessee, Woodward. Thus, we need to consider Mercantile's second argument only as it relates to that lease.

In support of its claim, Mercantile argues that it *did* demand payment from Woodward. However, Mercantile's only action in trying to collect from Woodward was to send Woodward a letter telling him that he should make all future payments to Mer-

cantile and not Prior. We agree with the district court that this letter was not a demand for payment but only a necessary notification to Woodward regarding where to send lease payments.

Mercantile also argues that it was excused from taking further action against Woodward because collection attempts made against a debtor in bankruptcy would be fruitless. Mercantile relies on 38 Am. Jur.2d *Guaranty* § 111 (1968) which states that creditors are "excused from proceeding against the debtor if it is clear that such a process would be unavailing or fruitless." Mercantile does not refute the district court's finding that Mercantile did not know of Woodward's bankruptcy until after instituting the instant suit against F & M. However, Mercantile seems to rely on the theory that, since demand would have been fruitless anyway, it was under no obligation to make a demand regardless of its knowledge of Woodward's bankruptcy.

Under Kansas law, "[w]here a principal obligor is admittedly insolvent, the indemnified party. may proceed at once against the guarantors without first pursuing a futile action against the principal." *Furst v. Buss*, 104 Kan. 245, 178 P. 411, 412 (1919). This rule is based on the "ancient legal maxim that the law requires no one to do vain or useless things...." *Id.* We do not believe that this rule was intended to excuse a creditor from making at least a rudimentary demand for payment. Indeed, *Furst* seems to indicate that the debtor's bankruptcy only excuses a creditor from *filing suit* against the debtor before proceeding against the guarantor. *See, id.,* 178 P. at 412–13. Mercantile's bald assertion that demand for payment against Woodward would have been vain or useless is mere speculation, and is not sufficient to excuse it from making such a demand. We note that F & M claims Woodward tried to buy his leased equipment from Mercantile at a discounted price after he went into bankruptcy. While we make no holdings in

regard to F & M's claim, we do see the claim as an example that a simple demand for payment may not be "vain or useless," even when the debtor is in bankruptcy. Thus, we hold that Mercantile failed in its requirement to collect payment from Woodward before proceeding against F & M.

### III.

F & M cross appeals. While the issues in the cross appeal are not clearly enumerated, they can be summarized as: (1) the district court erred when it denied F & M's motion for summary judgment; (2) the court erred when it found that the lease assignment "with full recourse" was a unilateral error on the part of F & M; and (3) the court erred when it did not allow F & M to assert the personal defenses of the lessees against Mercantile.

### A.

F & M claims that the district court erred in denying its motion from summary judgment. Specifically, F & M argues that the language "with full recourse" is void because it prohibited a reduction of Prior's indebtedness to F & M and was thus contrary to the contract's purpose.[2] F & M cites to no legal principles in support of its claim, and we find none. Indeed, F & M's counsel conceded during opening statements at trial that "technically these leases may not be included in the lending limits [of Prior]...." (R., Vol. VIII, p. 14).

In contrast, Mercantile points to the testimony at trial of Suzanne Glass, then senior vice president in charge of loan administration for Mercantile, William Messer, then executive vice president in charge of all lending functions for Mercantile, and Newton Male, bank commissioner for the State of Kansas, all indicating that the transaction as structured *did* reduce Prior's total indebtedness to F & M for purposes of F & M's legal lending limit. (R., Vol. VIII, pp. 26, 88, 124–25). According to Male, the assignment of the leases "with

---

**2.** F & M makes two other arguments in support of its claim that the district court erred in denying its summary judgment motion. We have carefully considered these arguments, and find them to be meritless.

full recourse" had no effect on Prior's indebtedness to F & M because F & M was guaranteeing payment by the underlying lessees, not Prior. *Id.* at 124–25. We find Male's reasoning to be logical and hold that the district court did not err in denying the summary judgment motion on this ground.

## B.

■ F & M claims that the district court erred when it found that the lease assignment "with full recourse" was a unilateral error on the part of F & M. Specifically, F & M argues that: *both* parties intended the leases to be assigned "without recourse;" Riffle, Mercantile's former employee, testified to that effect; Mercantile's loan and discount committee approved such an assignment the day that McPeek presented a proposal for participation, and nothing in the committee notes indicates otherwise; and the only Mercantile employees who testified that they recalled that the leases were to be assigned "with full recourse" were not in contact with F & M employees and could not have informed F & M to assign the leases that way.

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). In this case, there was evidence that: Mercantile wanted the leases to be assigned "with full recourse;" Messer instructed McPeek to inform F & M of this desire; F & M so assigned the leases; the F & M employees who drafted and typed the endorsements knew the difference between an assignment "with recourse" and one "without recourse;" and McPeek, who dealt directly with F & M employees, reviewed the leases and found nothing inconsistent with his understanding of the transaction. Given these facts, we cannot say that the district court erred in finding that the assignment of the leases "with full recourse" was a unilateral error on the part of F & M. F &

M's reliance on Riffle's testimony to challenge the district court's finding is misplaced, since the district court found that Riffle was not a credible witness. We give "due regard" to the district court's opportunity to judge such credibility.

## C.

■ F & M's third claim is that the district court erred when it did not allow F & M to assert the personal defenses of the lessees against Mercantile. F & M claims that Smith and Prather could have avoided paying Mercantile because they had already paid Prior in full, while Johnson could have avoided paying Mercantile because he never received from Prior the equipment to be leased. F & M claims that it should be able to assert these defenses in the instant action.[3]

F & M's claim is without merit. As noted in 38 C.J.S. *Guaranty* § 88 (1943):

> In general, the guarantor may set up any defense that would have been available to the principal obligor, against the [creditor] . . .; and, on the other hand, matters relating to the principal contract and its performance which would not be available as defense to the principal, are generally unavailable to the guarantor.

In this case, the leases provide that the rights of any assignee of the lease "shall be free from all claims, defenses, setoffs or counterclaims which Lessee may be entitled to assert against Lessor." (R., Vol. I, Tab 1, Exh. A). Because all the lessees' alleged defenses are defenses against Prior, and because the lessees have waived the right to assert such defenses against any assignee, the lessees have waived the right to assert these defenses against Mercantile. Thus, even if the allegations supporting these defenses were true, the defenses are unavailable to F & M as guarantor because they are unavailable to the lessees.

F & M claims that, if the leases are enforceable as written, Mercantile could reap double recovery by collecting from

---

**3.** F & M also attempts to assert as a defense Woodward's claim that he tried to buy his leased equipment from Mercantile at a discounted price after he went into bankruptcy. We make no conclusions in regard to this defense since it was not considered by the district court which found in F & M's favor and, thus, did not consider this question.

**1548**

Prior on the promissory notes and then collecting from F & M or the lessees on the leases. However, the intent of the parties controls Mercantile's ability to collect twice. As noted by the district court, the documents in this case were ambiguous, and the intent of the parties had to be ascertained by considering the facts and circumstances surrounding the execution of the agreement. (R., Vol. I, Tab 42, pp. 4–5). *See also Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 738 P.2d 866, 869 (1987). This review of the parties' intent acts as a safeguard against such double recovery. Thus, F & M's claim is unwarranted.

### IV.

Based on the above reasoning, we REVERSE the district court with respect to the Smith, Petterson and Johnson leases, and REMAND to the district court for a determination of amounts due Mercantile. We AFFIRM the district court with respect to the Prather lease, although our affirmation is on the ground that the guarantee was unconditional and not on the district court's finding that Mercantile made sufficient demand on Prather before proceeding against F & M.

As to the Woodward lease, we AFFIRM the district court's findings but REMAND for such further proceedings as the court deems necessary. In entering judgment in F & M's favor on the Woodward lease, the district court found that F & M's liability under that conditional guarantee was discharged when Mercantile failed to make collection efforts. 698 F.Supp. at 850. It is true that "[r]easonable diligence requires that the creditor demand payment from the debtor and give notice of default to the guarantor; and if the creditor fails to do so, he may be barred from recovery." 38 Am.Jur.2d *Guaranty* § 108. However, it is also true that if "an act or omission which, although in breach of some duty of the [creditor], is not such as to affect the guarantor's rights or liabilities [, it] will not

release him." 38 C.J.S. *Guaranty* § 67. The district court did not find that F & M's rights or liabilities were affected by Mercantile's failure to initially demand payment from the principal before bringing suit against F & M. Without such a finding, the court erred in releasing F & M from further liability. Thus, we REMAND with directions that the court consider whether F & M's rights or liabilities were affected.

### ORDER
March 4, 1991.

Pursuant to Fed.R.App.P. 42(b) and the stipulation submitted by the parties, our judgment entered December 10, 1990 is vacated and dismissal of these appeals is herewith entered.

A certified copy of this order shall stand as and for the mandate of this court.